**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Donna M. COLEMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 3, 2006.

Filed Aug. 9, 2006.

Michael P. Quinn, Philadelphia, for appellant.

Stuart B. Suss, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: HUDOCK, TODD and POPOVICH, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence imposed upon Appellant after she was convicted at a bench trial of multiple counts of Medicaid fraud and related charges.[1] We affirm.

¶ 2 The trial court ably summarized the pertinent facts and procedural history as follows:

Agent Vicki Bicking of the Pennsylvania Office of Attorney General received a complaint from the Jewish Employment Vocational Services (JEVS), in reference to potential Medicaid Fraud. JEVS is a state and federally funded program that provides assistance to people with long-

term disabilities. The disabled person hires their attendant themselves, then time sheets for the attendant are submitted to JEVS, which then issues a paycheck to the disabled person, who in turn pays the attendant. [Appellant] qualified for this program due to her multiple sclerosis.

The complaint originated when [Appellant's] husband, Paul Coleman, contacted JEVS to report that his wife had been filling out time sheets in the name of Angela Light, who had passed away prior to the time frame for which [Appellant] was submitting time sheets. Agent Bicking began her investigation by obtaining all information that JEVS had in regards to Angela Light. Through her investigation, Agent Bicking determined that a driver's license number and a social security number provided on Angela Light's work application were both invalid. It was also confirmed that Angela Light had died on April 3, 2001. After this initial information was discovered, the case was placed before the Statewide Investigative Grand Jury. Handwriting exemplars were taken from both [Appellant] and her husband, Paul Coleman, as well as from other attendants who allegedly provided services to [Appellant], Helen Johnson, Betty Tate, and Marie Coln. Bank records were also obtained.

The handwriting expert, Gus Lesnevich, determined that there were signatures of Angela Light that matched [Appellant's] handwriting, both on time sheets and on checks being deposited into [Appellant's] bank account. The same was true for checks made out to Helen Johnson. The handwriting expert also determined that Marie Coln, in fact signed time sheets and checks

---

1. 62 P.S. § 1407.

signed by Marie Coln. Marie Coln is [Appellant's] mother, and under JEVS rules, is not allowed to be working for [Appellant], and therefore is in violation of the Department of Public Welfare Regulations.

The expert also determined that the signatures of Betty Tate were Betty Tate's, and that pay checks signed by Betty Tate were deposited into a bank account that belonged to Betty Tate. However, Betty Tate and Helen Johnson both testified that their time sheets were altered as far as the exact dates and times that they worked. Helen Johnson also testified that there were signatures of her name on her JEVS application that were not written by her.

Based on the evidence at trial, this court found [Appellant] guilty of five (5) counts of Medicaid Fraud; Perjury; Theft by Deception; eighty-seven (87) counts of Tampering with Public Records or Information; forty-two (42) counts of Forgery; and Criminal Conspiracy. After a pre-sentence investigation, this Court imposed an aggregate sentence of not less than two (2) years nor more than ten (10) years in a state correctional institution, fines and the costs of prosecution. In addition, [Appellant] was ordered to pay restitution to the Pennsylvania Department of [Public] Welfare in the amount of $40,921.92 and $18,331.90 to the Attorney General for costs of the investigation. On June 9, 2004 [Appellant] filed Omnibus Post Verdict Motions. This court denied [Appellant's] motions in a memorandum order dated October 26, 2004. On November 29, 2004, [Appellant] filed a notice of appeal.

Trial Court Opinion, 3/25/05, at 1–3 (citations omitted). Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

¶ 3 Appellant raises the following issues on appeal:

DID THE LOWER COURT [DEPRIVE APPELLANT] OF HER RIGHT TO COUNSEL BY FORCING HER TO GO TO TRIAL WITHOUT COUNSEL AND WITHOUT FIRST CONDUCTING AN ADEQUATE WAIVER COLLOQUY OF HER?

DID THE SENTENCING COURT IMPOSE AN ILLEGAL SENTENCE WHEN IT ORDERED [APPELLANT] TO PAY RESTITUTION TO THE ATTORNEY GENERAL FOR THE EXPENSE HIS OFFICE INCURRED IN INVESTIGATING THE INSTANT [MATTER] AND TO THE PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE?

Appellant's Brief at 4. We will address these issues in the order presented.

¶ 4 In support of her first claim, Appellant asserts that she did not knowingly, voluntarily and intelligently waive her right to counsel because the trial court did not explain to her "the elements of the crimes with which she was charged or the penalties associated therewith" and the "various dangers associated with self-representation." Appellant's Brief at 9, 10. She contends, therefore, that this omission constituted a clear violation of her Sixth Amendment right to counsel, requiring the vacation of her judgment of sentence and the award of a new trial.

¶ 5 Appellant relies upon this Court's decision in *Commonwealth v. Houtz*, 856 A.2d 119 (Pa.Super.2004). In *Houtz*, a new trial was granted based upon a violation of the right to counsel that resulted from requiring the defendant to represent herself at trial in the absence of an adequate waiver colloquy provided by the court, pursuant to Rule 121 of the Pennsylvania Rules of Criminal Procedure. In so concluding, this Court stated:

[W]e empathize with the court's plight, where [Houtz] appeared before the court without counsel, after having been given several generous continuances to obtain an attorney. This record demonstrates a sequence of events that might easily have tested the patience of any court. Nevertheless, we are compelled by prevailing Pennsylvania law to vacate [Houtz's] judgment of sentence and remand for a new trial.

*Houtz,* 856 A.2d at 130–31. The "prevailing law" principally relied upon by this Court in *Houtz* was this Court's prior decision in *Commonwealth v. Carothers,* 450 Pa.Super. 208, 675 A.2d 734 (1996). In *Carothers,* this Court held that a defendant who asserts an inability to afford counsel presents a reasonable excuse for not appearing with counsel, and may not be forced to represent himself or herself without the proper rule-based colloquy. Since an inadequate Rule 121 colloquy was given, the *Houtz* panel awarded a new trial.

¶ 6 While the procedural history of granting several continuances so that the criminal defendant could obtain counsel in *Houtz* is similar to what occurred in the instant case, there are other factors present in this case which readily distinguishes *Houtz.* As the trial court explained:

In the instant case, [Appellant] appeared in court numerous times without counsel, after having dismissed them or engaged in conduct forcing them to withdraw. Additionally, [Appellant] admitted that she had the means to hire counsel.

Appellant was initially arraigned on these charges in September 2003. One attorney who represented [her] during pre-trial and participated in various negotiations with the Commonwealth on her behalf, later indicated to the Attorney General's Office that he would not formally represent [Appellant]. In November 2003, a second attorney formally entered his appearance on behalf of [Appellant], however, in January 2004, withdrew as counsel. Appellant was firmly instructed to retain counsel and to be prepared to go to trial no later than Monday, April 19, 2004. [Appellant] was explicitly warned for a second time that the case would be listed for trial and that she would be expected to represent herself if counsel did not appear.

Further, this court ordered [Appellant] on two separate occasions to report to the Public Defender's office to determine if she was eligible for appointed counsel or appointed stand-by counsel. The Public Defender's Office declared a conflict in the case since they had represented her husband on a related matter. However, after two separate examinations of her financial condition, the Public Defender's Office concluded that [Appellant] did not qualify for representation. As an aside, [Appellant] hired private counsel in another criminal matter in Montgomery County, even though court appointed counsel was available.

Because [Appellant] was clearly capable of retaining counsel, but simply refused to do so, she forfeited her right to counsel.

Trial Court Opinion, 3/25/05, at 15–16.

¶ 7 Unlike the facts in *Houtz,* the trial court found in this case that Appellant had the financial ability to hire counsel but refused to do so. Thus, the trial court determined that Appellant forfeited her right to counsel. The distinction between forfeiting the right to counsel and waiving the right to counsel has been recently recognized by this Court in *Commonwealth v. Thomas,* 879 A.2d 246 (Pa.Super.2005). In *Thomas,* the defendant, who was charged

with assault and related charges,[2] vacillated during pretrial proceedings and trial as to whether he wished to be represented by counsel or defend himself *pro se*. As this Court summarized:

> At various times between his arrest and state trial, [Thomas] had five different court-appointed counsel. Appellant also filed a motion to proceed *pro se*, which the court granted. A jury trial was held on April 15–17, 2003. Appellant was not present at trial, but was represented for most of the trial by court appointed counsel.

*Thomas,* 879 A.2d at 251. Among the claims Thomas raised on appeal was his assertion that his constitutional right to counsel was violated because the trial court permitted standby counsel to withdraw on the third day of trial and, therefore, he was forced to defend himself. The court granted counsel's request to withdraw because Thomas had made physical threats toward him, "leaving [Thomas] to complete his trial without the benefit of counsel." *Thomas,* 879 A.2d at 257.

¶ 8 In addressing Thomas' claim, this Court stated:

> Although a criminal defendant has the right to be represented by counsel, the right can be waived or forfeited. We find persuasive the Third Circuit's distinction between waiver and forfeiture. *United States v. Goldberg,* 67 F.3d 1092, 1099–101 (3d Cir.1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1099. It is well established that waiver of the right to counsel is valid only if it is made voluntarily, knowingly and intelligently. Pa.R.Crim.P. 121(C); *Johnson v. Zerbst,*

304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Commonwealth v. Brazil,* 549 Pa. 321, 325–26, 701 A.2d 216, 218 (1997); *Commonwealth v. Barnette,* 445 Pa. 288, 290–91, 285 A.2d 141, 142–43 (1971). By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas,* 357 F.3d 357, 362 (3d Cir.2004) (quoting *Goldberg,* 67 F.3d at 1100–02).

> The Third Circuit acknowledged that the United States Supreme Court has not expressly ruled on the question of forfeiture of the right to counsel, nor on the level of misconduct or defiance that may give rise to the forfeiture. *Fischetti v. Johnson,* 384 F.3d 140, 152 (3d Cir.2004). Nonetheless, federal circuit courts have found forfeiture of the right to counsel under several circumstances, including when a defendant physically attacked his attorney, *United States v. Leggett,* 162 F.3d 237 (3d Cir.1998), *cert. denied,* 528 U.S. 868, 120 S.Ct. 167, 145 L.Ed.2d 141 (1999); when a defendant was abusive, threatening, and coercive to his attorney, *United States v. McLeod,* 53 F.3d 322, 326 (11th Cir. 1995); and when a defendant threatened counsel with physical confrontation, verbally abused him, refused to cooperate with him in preparing a defense, and attempted to coerce him into filing frivolous claims. *Thomas,* 357 F.3d at 363.

*Thomas,* 879 A.2d at 257–58 (footnote omitted).[3] In finding that Thomas forfeited his right to counsel, this Court stated that "the record amply supports the trial

---

2. Thomas was also tried on federal drug charges. *See infra.*

3. This Court further acknowledged that *Thomas,* 357 F.3d 357 (3d Cir.2004) was "the

Third Circuit Court's affirmation of [Thomas'] federal conviction for possession with intent to deliver cocaine." *Thomas,* 879 A.2d at 258 n. 7.

court's determination that [Thomas] 'put himself in this position intentionally.'" *Id.* at 259. We further reasoned that to reward Thomas for his "misconduct would be illogical and against the interests of justice." *Id.* Most importantly to the claim at issue in this case is the fact that this Court in *Thomas* did not require, in contradistinction to a valid waiver of counsel, compliance with the Pa.R.Crim.P. 121 colloquy before affirming the trial court's forfeiture determination.

¶ 9 The issue in this case then becomes whether Appellant, by her intentional and dilatory conduct, forfeited her right to counsel, such that a Rule 121 colloquy was not required. Our review of the record supports the trial court's conclusion that she did. *See Commonwealth v. Wentz,* 280 Pa.Super. 427, 421 A.2d 796 (1980) (holding that a criminal defendant who has been duly notified of the date of his trial, and who has been advised to obtain counsel to represent him, and who nevertheless later appears without counsel and with no reasonable excuse for the lack thereof, and no concrete plans for the obtaining of counsel, has "waived" his right to counsel; the court did not require a waiver colloquy before the right to counsel could be deemed "waived.")

¶ 10 Moreover, as this Court did in *Thomas, supra,* we find the jurisprudence of the Third Circuit Court of Appeals to be both instructive and persuasive. *See e.g., Wilkerson v. Klem,* 412 F.3d 449 (3d Cir. 2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1616, 164 L.Ed.2d 354 (2006) (denying *habeas corpus* relief to a Pennsylvania defendant in a situation where this Court affirmed the trial court's finding that the defendant forfeited the right to counsel by failing to retain private counsel despite the financial ability to do so).[4]

¶ 11 Finally, we find Appellant's misconduct in this case to be akin to the body of law in Pennsylvania that holds a criminal defendant is not entitled to counsel of his or her choice. As our Supreme Court has stated:

[T]he constitutional right to counsel of one's own choice is not absolute. Rather, the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may reasonably be restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. At the same time, however, we have explained that a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.

*Commonwealth v. McAleer,* 561 Pa. 129, 748 A.2d 670, 673–74 (2000) (citations and quotation marks omitted). After careful review, we conclude that the record supports the trial court's conclusion that Appellant "played games" with the court system to such an extent that she forfeited her right to counsel, thereby rendering a Rule 121 colloquy unnecessary. Thus, the court did not err in proceeding to try Appellant without the assistance of counsel.

■ ¶ 12 In her second claim, Appellant asserts that the trial court should not have included as part of its sentence an order of restitution directing her to pay the Office of the Pennsylvania Attorney General $18,331.90 for the expenses it incurred in

**4.** We further note that Appellant has only claimed a violation of the Sixth Amendment of the United States Constitution.

investigating the case, and in directing her to pay restitution in the amount of $40,921.92 to the Pennsylvania Department of Public Welfare. As to both claims, Appellant submits that error was committed because, under 18 Pa.C.S.A. section 1106, the Commonwealth itself, as well as its various departments, do not constitute "victims" as that term is defined in the section 1106 and cannot, therefore, be recipients of restitution. *See e.g. Commonwealth v. Boyd,* 835 A.2d 812 (Pa.Super.2003).

¶ 13 We agree with Appellant that, as this claim involves the legality of her sentence, it is properly before us. *See Commonwealth v. Dinoia,* 801 A.2d 1254, 1257 (Pa.Super.2002) (explaining that inquiry into the legality of a sentence is non-waivable); *Commonwealth v. Rossetti,* 863 A.2d 1185, 1193 (Pa.Super.2004) (holding that a challenge to the legality of a sentence is not waived by failing to include it in a Rule 1925(b) statement). However, we conclude that her argument on appeal is misplaced, as there exists independent statutory authority to require the payment of restitution to the Department of Public Welfare, *see* 62 P.S. section 1407(b)(2)(i) (providing that the trial court shall order any person convicted of fraud "to repay the amount of the excess benefits or payments plus interest on that amount at the maximum legal rate from the date payment was made by the Commonwealth to the date repayment is made to the Commonwealth"),[5] as well as the costs of prosecution. 16 P.S. § 1403. *See also Commonwealth v. du-Pont,* 730 A.2d 970, 987 (Pa.Super.1999).

¶ 14 Judgment of sentence affirmed.

5. The Commonwealth asserts that the $40,921.92 ordered to be repaid to the Department of Public Welfare reflected solely the amount of funds fraudulently received by Appellant without the inclusion of interest. Appellant does not dispute this fact.