**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Charles Joseph LUCARELLI,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 2006.

Filed Dec. 29, 2006.

Joseph R. Viola, Philadelphia, for appellant.

Gary E. Norton, Asst. Dist. Atty., Bloomsburg, for Commonwealth, appellee.

BEFORE: JOYCE, ORIE MELVIN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Charles Lucarelli appeals the judgment of sentence entered upon his convictions of recklessly endangering another person, risking a catastrophe, intentional criminal mischief with pecuniary loss in excess of $5,000 and disorderly conduct. *See* 18 Pa.C.S. §§ 2705, 3302(b), 3304(a)(1), 5503(a)(4), respectively. Lucarelli asserts that the trial court deprived him of his constitutional right to counsel, erred in imposing restitution, and that the evidence was insufficient to support his convictions. We find that the trial court denied Lucarelli his constitutional right to be represented by counsel. Accordingly, we vacate the judgment of sentence and remand for a new trial.

¶ 2 On January 11, 2004, Michael Lee Bennett, his wife and four-year-old twins were sitting in a parked car in the parking lot of Kreiser's Truck Stop in Mifflinville, Columbia County. Bennett looked into his side rear view mirror and saw Lucarelli's car approaching. Bennett testified that he saw Lucarelli's car spray some "liquid" out of its passenger-side, rear-quarter panel behind the right rear wheel onto his car. Lucarelli's car sprayed the liquid onto the whole length of the driver's side of Bennett's car in a "steady stream" from four or five feet away. Bennett testified that

the liquid "sort of smelled like WD–40 or like paint thinner."

¶ 3 Being concerned as to the contents of the liquid, Bennett called 911 and talked to the authorities while he followed Lucarelli's car. The chase resulted in a circuitous tour that ended back at Kreiser's Truck Stop. The police arrived shortly thereafter, followed by the local Mifflinville Volunteer Fire Company, the Bloomsburg Volunteer Fire Company HAZMAT Team, emergency medical technicians and the personnel and staff of Minuteman Spill Response, Inc. The police arrested Lucarelli, the authorities quarantined Bennett's car, and an ambulance took Bennett and his family to Berwick Hospital's emergency room decontamination area.

¶ 4 Upon examination of Lucarelli's car, the police discovered that it was rigged up with an intricate system to pump and spray a liquid substance from two different ports in the right side. A pump was connected to the electrical system of the vehicle and was operated by a switch that was installed in the dashboard. Because Lucarelli would not disclose the chemical composition of the liquid, the HAZMAT team secured the liquid from his car and had it tested. John James Tobin of Seewald Laboratories used a mass spectrometer and confirmed that the liquid was highly toxic and flammable, being composed of aromatic and aliphatic solvents, acetone, tolune, methylene chloride, ammonium hydroxide, and isopropyl alcohol. The police also executed a search warrant at Lucarelli's residence and found Tough Job remover, acetone, rubbing alcohol, paint stripper, and other milky, unknown substances. Fortunately, no one was injured during these events and Bennett's car was not damaged.

¶ 5 The Commonwealth charged Lucarelli with recklessly endangering another person, risking a catastrophe, intentional criminal mischief with pecuniary loss in excess of $5,000 and disorderly conduct. On March 4, 2004, the trial court appointed Daniel Lynn, Esquire, to serve as Lucarelli's stand-by counsel. On March 15, 2004, Robert Kurtz, Esquire, entered his appearance for Lucarelli by filing a Motion for Bail Reduction, but Kurtz withdrew his appearance by Praecipe on March 19, 2004. Lucarelli then retained Thomas Marsilio, Esquire, to represent him. On May 26, 2004, Marsilio filed a Request for a Bill of Particulars. On June 17, 2004, Marsilio petitioned to withdraw as counsel, which Lucarelli responded to by filing a pro se "Petition for Due Process Violation and Attorney Misconduct." On July 8, 2004, the trial court held a hearing regarding Marsilio's motion to withdraw. Marsilio sought to withdraw because Lucarelli was "consulting with nonlawyers," taking their advice over his, and that he believed Lucrelli's "behavior and thought processes [were] paranoid and delusional[.]" Notes of Testimony (N.T.), 7/08/04, at 2. Lucarelli insisted that he wanted Marsilio to be his attorney. N.T., 7/08/04, at 6. The trial court granted withdrawal and suggested that Lucarelli "get somebody else to look at [his] case." N.T., 7/08/04, at 6. Lucarelli explained to the trial court that he does not have any money because he already paid Marsilio $10,000.00. N.T., 7/08/04, at 6. The trial court instructed Lucarelli that he could apply for a public defender, but Lucarelli stated that the public defender's office did not "want him." N.T., 7/08/04, at 7. At this time, the Commonwealth's prosecutor suggested that Lucarelli, for the time being, represent himself pro se. N.T., 7/18/04, at 7–8. The trial court agreed, instructed the Commonwealth's prosecutor to pick a jury for Lucarelli, and informed Lucarelli that he must appear for jury selection. N.T., 7/08/04, at 8–9. Lucarelli insisted that it wasn't his fault, and

that he did not want Marsilio to withdraw as his attorney. N.T., 7/08/04/, at 8.

¶ 6 On July 13, 2004, the trial court held a hearing regarding Lucarelli's trial date, in which Lucarelli appeared *pro se.* The following exchange took place:

THE COURT: Mr. Lucarelli, your case has been called for the trial this term, although your attorney was allowed to withdraw the other day. And the issue is whether you go to trial right now or not. Mr. Norton [the Commonwealth's lawyer], what's your position on it?

MR. NORTON: Commonwealth is ready to proceed to trial.

THE COURT: What's your position, Mr. Lucarelli?

MR. LUCARELLI: I am here to request a Public Defender ...

\*     \*     \*     \*     \*     \*

THE COURT: Here's what we're going to do, Mr. Lucarelli. Mr. Sumner, do you have any applications for Public Defender on you? Let's get one to Mr. Lucarelli before he leaves here today so he can—you got to file an application ...

\*     \*     \*     \*     \*     \*

THE COURT: What we're going to do is, we'll reschedule this [the trial] for September for sure, whether you have an attorney or not. That will give you plenty of time to get one and be ready to go. Mr. Norton, please put it on the schedule for September.

N.T., 7/13/04, at 2, 4, 6.

¶ 7 On September 8, 2004, Lucarelli failed to appear for jury selection, and the trial court issued a bench warrant for his arrest. On September 10, the trial court rescinded its bench warrant, and Lucarelli filed a *pro se* "Re–Submit Petition/Hearing to Know Who all Defendants Accusers Are" and a "Petition/Hearing for Alleging

That of Concealing two South Centre Tonwship Police by Commonwealth." On September 13, 2004, Lucarelli filed a *pro se* "Petition/Motion for Effective Counsel." On September 15, 2004, the trial court entered an order appointing David Trathen, Esquire, as Lucarelli's stand-by counsel. Lucarelli then filed six more petitions: (1) "Re–Submit Petition and Motion Under the Americans with Disabilities Act;" (2) "Petition for Hearing Complaint I filed in Columbia County Prison Taken By Lieutenant Joseph Wondoloski of Being Assaulted;" (3) "Petition for Hearing for Recusal;" (4) "Petition for Hearing to Re-submit Any Unanswered Exculpatory Evidence;" (5) "Petition for Hearing for Dr. Brain Snyder for Concealing Exculpatory Evidence;" (6) and another "Petition for Effective Council [sic] Under Sixth Amendment."

¶ 8 On October 7, 2004, the trial court held a hearing to address Lucarelli's *pro se* petitions, including his petitions for effective counsel:

THE COURT: Mr. Lucarelli, the first motion you have filed and they're all pro se is you want additional counsel?

\*     \*     \*     \*     \*     \*

MR. LUCARELLI: Your Honor, not to interrupt but it's not pro se.

THE COURT: Why is that?

MR. LUCARELLI: Because I've never said that I was pro se. I've only done this because I had to pick my case off the floor after my former attorney Marsilio put it there.

THE COURT: Here's how I will handle this, you say repeatedly in here that you want an attorney and you want an attorney to represent you, you don't want to be pro se. What I'm going to do is this, I'm going to keep Mr. Trathen in as stand-by, as stand-by if you don't get an attorney, to answer any questions you

might have because you're going to proceed by yourself otherwise. I'm going to resolve this ...

\* \* \* \* \* \*

MR. LUCARELLI: Can I say one last thing? If I have to, as far as a jury trial, I will not go alone before a jury. I just barely got out of high school, not last year but I did once.

N.T., 10/07/04, at 2–3, 5. Thereafter, the trial court reduced Lucarelli's bail from $100,000 to $80,000, in order for Lucarelli to have funds to retain counsel. N.T., 10/07/04, at 5. The trial court denied Lucarelli's Petitions for Effective Counsel as moot, and told Lucarelli to "get a lawyer," because it will be easier for "everybody." N.T., 10/07/04, at 6. *See also* Trial Court Order (T.C.O), 10/13/04, at ¶ 2.

¶ 9 On November 15, 2004, Lucarelli appeared for trial without an attorney, deciding instead to represent himself *pro se.* The trial court instructed the jury as follows:

THE COURT: Now the Defendant is representing himself. He is what we call pro se. I have appointed Mr. Trathen to stand by in an advisory capacity, if he has any questions of a legal nature ... But the fact that Mr. Lucarelli is representing himself, he has an absolute right to do that, should not be held against him nor should it be in his favor. So he's representing himself.

N.T., 11/15/04, at 13. Throughout the trial, Lucarelli proceeded *pro se* with the assistance of his stand-by counsel, Mr. Trathen.

¶ 10 Following a two-day trial, on November 16, 2004, a jury convicted Lucarelli on all charges. On June 28, 2004, the trial court sentenced Lucarelli to 60 days to 18 months' imprisonment for the criminal mischief conviction, but immediately paroled him, requiring community service and mental health counseling as conditions of his parole. On the convictions of recklessly endangering another person, risking a catastrophe and disorderly conduct, the trial court sentenced Lucarelli to two concurrent terms and one consecutive term of 12 months' probation. The trial court further ordered Lucarelli to pay restitution in the amount of $19,475.75 to cover the Bennett's medical expenses and also the expenses that the various governmental agencies and authorities incurred. Lucarelli now appeals to this Court, raising the following questions for our review:

1. Whether the trial court's tacit conclusion that Lucarelli, who adamantly insisted that he could not and did not wish to represent himself, had nevertheless waived his Sixth Amendment right to counsel and should be tried *pro se* with stand-by counsel, without conducting an on-the-record colloquy to determine a valid waiver, resulted in an egregious denial of Lucarelli's Sixth Amendment rights which vitiated the entire trial which culminated in his conviction of multiple unfounded charges[?]

2. Whether the Commonwealth's evidence was insufficient as a matter of law to sustain a conviction of Lucarelli beyond a reasonable doubt of any of [the] "danger"—based crimes of which the highly-inflamed jury readily found him guilty[?]

3. Whether the trial court [erred when ordering] restitution in the amount of $18,300 payable entirely to local government agencies in reimbursement of unjustifiable "emergency management" costs where Pennsylvania law expressly excludes "the Commonwealth" from the definition of "victim," and where the actual

victims, if there were any, suffered no injury or damage[?]

Brief for Appellant at 6.

¶ 11 In his first question on appeal, Lucarelli contends that the trial court deprived him of his right to be represented by counsel. Brief for Appellant at 22–27. "[T]he right to counsel ... [is] guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." *Commonwealth v. Payson,* 723 A.2d 695, 699 (Pa.Super.1999) (citations omitted). The constitutional right to counsel may be waived, but this waiver is valid only "if made with knowledge and intelligence." *Id.* at 700. Therefore, "[w]hen the defendant seeks to waive the right to counsel ... the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." Pa.R.Crim.P. 121(C).

¶ 12 To ensure that a waiver of counsel is knowing, voluntary, and intelligent, the defendant must be colloquied on his understanding of at least the following six elements:

(1) whether the defendant understands that he has a right to be represented by counsel and the right to free counsel if he is indigent, (2) whether the defendant understands the nature of the charges against him and the elements of each of those charges, (3) whether the defendant is aware of the permissible range of sentences and/or fines for the offenses charged, (4) whether the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules, (5) whether the defendant understands that there are possible defenses to these charges of which counsel might be aware, and if these defenses are not raised they may be lost permanently,

and (6) whether the defendant understands that, in addition to defenses, the defendant has other rights that, if not timely asserted, may be lost permanently and that if errors occur and are not objected to or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

*Commonwealth v. McDonough,* 571 Pa. 232, 812 A.2d 504, 506–07 (2002); Pa. R.Crim.P. 121 cmt. "Failure to conduct a thorough on-the-record colloquy before allowing a defendant to proceed to trial pro se constitutes reversible error." *Commonwealth v. Houtz,* 856 A.2d 119, 124 (Pa.Super.2004) (citation omitted).

¶ 13 Lucarelli asserts that the trial court failed to conduct an on-the-record colloquy to determine whether he wished to waive his right to counsel and proceed *pro se.* Brief for Appellant at 25. The Commonwealth concedes that the trial court did not conduct an on-the-record colloquy to determine whether Lucarelli waived his right to counsel. Brief for Appellee at 11. Instead, the Commonwealth argues that Lucarelli forfeited his right to counsel "due to abusive, threatening and coercive conduct towards attorneys and extremely dilatory conduct[.]" Brief for Appellee at 31. To support its proposition, the Commonwealth cites our previous decision in *Commonwealth v. Thomas,* 879 A.2d 246 (Pa.Super.2005). In *Thomas,* this Court adopted the Third Circuit's distinction between waiver and forfeiture of the right to be represented by counsel. *See id.* at 257 (stating that waiver is "an intentional and voluntary relinquishment of a known right[,]" while forfeiture is "the result of the defendant's 'extremely serious misconduct' or 'extremely dilatory conduct.' ") (citations omitted). We noted that "federal circuit courts have found forfeiture of the right to counsel under several circumstances, including when a defen-

dant physically attacked his attorney; when a defendant was abusive, threatening, and coercive to his attorney; and when a defendant threatened counsel with physical confrontation, verbally abused him, refused to cooperate with him in preparing a defense, and attempted to coerce him into filing frivolous claims." *Id.* at 257–58 (internal citations omitted). This Court ultimately concluded that the defendant in *Thomas* "forfeited his right to counsel through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate in his own defense." *Id.* at 258. We found it significant that by the time of the defendant's trial, the court had appointed five different attorneys to represent him; the defendant refused to be present at the trial and assist his latest counsel; the defendant had a disagreement with his counsel's defense strategy, repeatedly instructing his counsel not to present any defense whatsoever; and the defendant verbally threatened his counsel and his counsel's family's physical safety. *See id.* at 258–59. Based upon these facts, this Court held that the defendant "forfeited his right to counsel through continuing, extremely serious misconduct." *Id.* at 259.

¶ 14 After review of the record, we conclude that Lucarelli did not engage in any "extremely serious or dilatory conduct" that could amount to a finding that he forfeited his right to counsel. The Commonwealth argues that Lucarelli was "abusive, threatening and coercive to ... Attorney Marsilio[.]" Brief for Appellee at 30. The only evidence that the Commonwealth proffers to support its contention is that after Marsilio filed a motion to withdraw, Lucarelli sent him a defaming letter, threatened to take him to the disciplinary board, and served him with a petition alleging misconduct violating the attorney/client privilege of confidentiality

and due process. N.T., 7/08/04, at 3. However, Lucarelli's actions occurred after Marsilio collected from him a $10,000 retainer fee, filed a motion to compel the Commonwealth to answer requests for Bills of Particulars, and then motioned to withdraw less than a month later. N.T., 7/08/04, at 3–4; Criminal Docket, Court of Common Pleas of Columbia County, pp. 7–8 of 26. Moreover, Attorney Marsilio's basis for withdrawal was not because Lucarelli was physically or verbally threatening. Rather, Marsilio sought to withdraw because Lucarelli was "consulting with nonlawyers," taking their advice over his, and that he believed Lucarelli's "behavior and thought processes [were] paranoid and delusional[.]" N.T., 7/08/04, at 2. In this context, Lucarelli's subsequent letter, threat to go to the disciplinary board, and petition are insufficient evidence to support a finding that Lucarelli forfeited his right to counsel as a matter of law. Therefore, we conclude that the facts of this case are distinguishable from those presented in *Thomas* and the cases cited therein and do not give rise to the level of "abuse" that is necessary to conclude Lucarelli forfeited his right to counsel. *Cf. United States v. Thomas,* 357 F.3d 357, 363 (3d Cir.2004) (finding forfeiture when a defendant threatened counsel with physical confrontation, verbally abused him, refused to cooperate with him in preparing a defense, and attempted to coerce him into filing frivolous claims).

¶ 15 The Commonwealth also contends that Lucarelli engaged in "extremely dilatory conduct" because he filed too many motions and delayed trial. Brief for Appellee at 30–31. We conclude that since the trial court required Lucarelli to proceed *pro se* after granting attorney Marsilio's motion to withdraw, Lucarelli's pretrial motions, though numerous, were reasonable. Without addressing the issue of whether the trial court should have ap-

pointed trial counsel to Lucarelli as an indigent, we find that any delay in the trial was also reasonable, because the trial court did not make funds available for Lucarelli to retain counsel until October 7, 2004, less than five weeks before trial, and did not grant Lucarelli's request for a continuance. *Cf. Commonwealth v. Coleman,* 905 A.2d 1003, 1006–08 (finding forfeiture when the trial court found that the appellant had the financial ability to hire counsel, granted the appellant several continuances in order to obtain counsel, instructed the appellant that trial will begin in three months whether or not she retained counsel, and then the appellant appeared on the date of trial without counsel). Therefore, we conclude that Lucarelli did not "forfeit[ ] his right to counsel through continuing, extremely serious misconduct." *Thomas,* 879 A.2d at 259.

▪ ¶ 16 Having decided that Lucarelli did not forfeit his right to counsel, we now analyze the record to determine whether he waived his right to counsel. "While an accused may waive this constitutional right, such a waiver must be the free and unconstrained choice of its maker, and also must be made knowingly and intelligently[.]" *Commonwealth v. Monica,* 528 Pa. 266, 597 A.2d 600, 603 (1991) (citations and internal quotation marks omitted). Therefore, "[w]hen the defendant seeks to waive the right to counsel ... the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." Pa. R.Crim.P. 121(C). "Failure to conduct a thorough on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error." *Houtz,* 856 A.2d at 124. (citation omitted).

¶ 17 Upon our review of the record, we find that the trial court failed to cover any of the areas set forth in the comment to Rule 121 to ascertain whether Lucarelli was executing a knowing, voluntary and intelligent waiver of counsel. *See* Pa. R.Crim.P. 121 cmt. After the trial court reduced Lucarelli's bail money, Lucarelli chose not to hire private counsel, but instead, decided to represent himself *pro se. See N.T.,* 11/15/04, at 1–15. Lucarelli made his decision to proceed *pro se,* after he told the trial court that he did not have money for a lawyer, the public defender's office "did not want him," and the trial court denied his petitions for court-appointed counsel. In *Monica,* our Supreme Court was confronted with a similar factual scenario where the appellant did not qualify for the public defender's office, made numerous requests for legal assistance, chose not to hire private counsel and appeared for trial *pro se. See Monica,* 597 A.2d at 604. The Court concluded:

> the trial court committed reversible error by allowing Appellant to proceed with trial under his own representation without first conducting a thorough on-the-record colloquy to determine whether Appellant knowingly and understandingly made a decision to represent himself and also to determine the validity of his waiver of the constitutional right to be represented by counsel.

*Id.* Moreover, the fact that the trial court appointed Lucarelli stand-by counsel and made financial accommodations in order for him to retain counsel does not relieve it of its obligation to conduct a Rule 121 colloquy. *See Commonwealth v. Brazil,* 549 Pa. 321, 701 A.2d 216, 219 (1997) (holding that the trial court must conduct a waiver of counsel colloquy even where standby counsel is appointed); *Payson,* 723 A.2d at 701 ("The question of waiver must be determined regardless of whether the accused can or cannot afford to engage counsel.") (citations and emphasis omitted). As such, the trial court erred when

it allowed Lucarelli to proceed to trial *pro se* with standby counsel without first conducting a proper colloquy on the record pursuant to Rule 121 to ensure his knowing, voluntary and intelligent waiver of counsel. Therefore, we conclude that the trial court denied Lucarelli's constitutional right to be represented by counsel because Lucarelli did not knowingly and voluntarily give up the right to be represented by counsel. Consequently, we grant Lucarelli a new trial. *See Payson,* 723 A.2d at 699–700 (stating that the denial of the right to counsel can never be harmless error).

¶ 18 Since our resolution of Lucarelli's first question results in remand of this case for a new trial, we need not address his other questions.

¶ 19 For the forgoing reasons, we vacate the trial court's judgment of sentence, reverse the conviction, and remand for a new trial.

¶ 20 Judgment of sentence **VACATED,** conviction **REVERSED,** and case **REMANDED** for a new trial. Jurisdiction **RELINQUISHED.**

¶ 21 ORIE MELVIN, J., files a Dissenting Opinion.

## DISSENTING OPINION BY ORIE MELVIN, J.:

¶ 1 Because I am persuaded by a review of the record that Appellant did effectively forfeit his right to counsel, I respectfully dissent from the Majority's decision to remand for a new trial.

¶ 2 The Majority concludes that "the trial court required Lucarelli to proceed *pro se* after granting [A]ttorney Marsilios' motion to withdraw." Op. at 930. I would note that I find the trial court's decision to grant Attorney Marsilio's motion to withdraw was entirely proper, and the reasons therefor are amply supported by the transcript of the hearing held on July 8, 2004.[1] Review of the record also demonstrates the following.

¶ 3 On July 2, 2004, Appellant filed a "Petition for Due Process Violation and Attorney Mis-conduct [sic] by Attorney [ ] Masilio [sic]." Certified Record (C.R.) at 17. In that petition, Appellant asserted *inter alia* that Attorney Marsilio violated attorney-client privilege, attempted to "cover-up his own inadequacies," and failed to provide effective counsel. *Id.* The trial court denied Appellant's petition as moot by order of July 9, 2004, on the basis that Attorney Marsilio had been granted leave to withdraw. *Id.* at 19. On July 8, 2004, Appellant filed a *pro se* petition under the Americans with Disabilities Act (ADA) in which he asserted that Attorney Marsilio had failed to begin preparing a defense on Appellant's behalf and thereby violated his due process rights. *Id.* at 20. The trial court issued a rule and scheduled a hearing for August 26, 2004.

¶ 4 Appellant's case was called for trial on July 13, 2004, at which time he requested a public defender. N.T. Hearing, 7/13/04, at 2. He stated as follows.

[BY APPELLANT]: Well, you granted my attorney withdrawal and he refused to refund any money. So my position is that I could use some of that money to hire another attorney. Number one, I haven't seen a thread of evidence from my case. And I questioned Marsillio [sic] many times about the evidence. And also I haven't inspected or viewed any of the evidence at all. And I put that to Mr. Marsillio [sic] many times and all his answer was to me what do you want to do that for?

---

1. Indeed, it is clear that Appellant's only real objection to Attorney Marsilio's withdrawal related to Appellant having paid him a retainer.

*Id.* at 2–3. After a discussion about Appellant's discovery requests, the following exchange occurred.

> THE COURT: Here's what we're going to do, Mr. Lucarelli. Mr. Sumner, do you have any applications for Public Defender on you? Let's get one to Mr. Lucarelli before he leaves here today so he can—you got to file an application. And the issue is, do you have any money to pay an attorney. Do you?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Are you employed?
>
> [APPELLANT]: No, sir.
>
> THE COURT: Any income?
>
> [APPELLANT]: I get some from the military.
>
> THE COURT: You get a military pension or some sort of pension. Do you have an application?
>
> MR. SUMNER: Yes, Your Honor. My understanding is, he posted a substantial amount of bail which would be—his bail could certainly be used by an attorney to fund their representation clause.

> \* \* \*

> [APPELLANT]: I was out on bail and I tried to get some of the money back and was refused[.]

> \* \* \*

> THE COURT: I understand there's a substantial amount of bail put up. Mr. Lucarelli, lets' fill out the application, we'll go through that process and so fill that thing out and then that's your application for Public Defender. What we're going to do is, we'll reschedule this for September for sure, whether you have an attorney or not. That will give you plenty of time to get one and be ready to go. Mr. [Prosecutor], please put it on the schedule for September. . . . I know this wasn't an intentional matter as far as the defense is concerned, but you don't have an attorney so there's no sense. It wouldn't be fair to have a trial in the next week. . . . Why don't you fill out the application, get yourself an attorney and get rolling on this because you'll be on for the September term.

*Id.* at 4–7.

¶ 5 Appellant then filed a series of *pro se* motions in which he sought discovery, a mistrial, and dismissal of some of the charges. The trial court scheduled a hearing on these various motions for August 26, 2004, at the same time as the previously scheduled hearing on Appellant's ADA petition. The trial court denied Appellant's motions by several orders dated August 26, 2004.[2] C.R. at 26, 27, 28. Appellant filed another series of *pro se* motions requesting further discovery on September 3, 2004 and September 10, 2004. *Id.* at 29, 30, 34.

¶ 6 On September 8, 2004, a bench warrant was issued for Appellant's arrest for his failure to appear for jury selection. On September 13, 2004, Appellant filed a request for "effective counsil [sic]." *Id.* at 35. A hearing was scheduled for October 7, 2004 on Appellant's various motions, and the trial court appointed standby counsel for the upcoming November jury trial. *Id.* at 36. Appellant next filed several more *pro se* motions seeking, *inter alia,* relief under the ADA, recusal of the trial judge, further discovery, and new counsel. *Id.* at 37, 38, 41, 42, 44. These matters were also scheduled for hearing on October 7, 2004.

¶ 7 That hearing began with the following exchange:

---

2. Although it appears a hearing was held on August 26, 2004, there is no transcript of that proceeding contained in the certified record.

THE COURT: This is the time set for several hearings. I think we have eight of them, eight petitions filed and they're all set for now. I'm going to go down them one at a time. Mr. Lucarelli, the first motion you have filed, and they're all *pro se*, is you want additional counsel ... a petition for effective counsel under 6th amendment [sic].

[APPELLANT]: Your Honor, not to interrupt but it's not *pro se*.

THE COURT: Why is that?

[APPELLANT]: Because I've never said that I was *pro se*. I've only done this because I had to pick my case off the floor after my former attorney Marsillio [sic] put it there.

THE COURT: Here's how I will handle this: You say repeatedly in here that you want an attorney and you want an attorney to represent you, you don't want to be *pro se*. What I'm going to do is this: I'm going to keep Mr. Trathen in as standby, as standby, if you don't get an attorney, to answer any questions you might have because you're going to proceed by yourself, otherwise. I'm going to resolve this. First of all, the petition with Mr. Marsillio [sic], that's in another—you might be entitled to money back from him, I don't know, but he didn't want you, you didn't want him.

[APPELLANT]: I didn't say I didn't want him.

THE COURT: He didn't want you and it sounded like you didn't want him.

[APPELLANT]: I wanted some money back at least.

THE COURT: I understand that. Nobody is disagreeing with you on that. But you can't bog this case down because of that issue. What I'm going to do is, Mr. Trathen is going to stay in as a standby for purposes of consultation, Court-appointed consultation. However, *sua sponte*, that means on my own motion, I'm going to issue an Order here in a second reducing your bail to $80,000. That will give you some funds which I will release when you have an attorney to get another attorney, if you want one, and that gives you a lot of latitude to get somebody. Because you need somebody. You should have somebody. * * * I'm doing this on my own motion so you can get an attorney and deal with things, if you want to.

N.T. Hearing, 10/7/04, at 3–5. The trial court issued an order reducing Appellant's bail from $100,000 to $80,000 so he would have $20,000 available for retaining another attorney. Appellant replied that he "will not go alone before a jury" and indicated that he understood. *Id.* at 5–6. The remainder of the hearing focused on Appellant's discovery requests, and the trial court disposed of all pending motions.

¶ 8 The record next reflects Appellant filed several more *pro se* motions on October 12, 2004, one of which requested a pretrial conference. C.R. 45, 46, 49. On November 9, 2004, Appellant filed a *pro se* motion for a continuance of his trial scheduled for November 15, 2004, because he had not had an opportunity to depose a certain witness, Dr. Snyder,[3] and was "forced to be his own attorney by a judge

---

3. The witness who Appellant wished to depose, Dr. Snyder, was an emergency room physician who was present when Appellant was brought in for treatment on the night of the incident. The issue of Appellant's ability to question Dr. Snyder had already been the subject of various discovery motions, and, several weeks before trial was to start, the trial court directed this witness to submit to an interview/deposition with Appellant "upon proper notice". C.R. at 47. Just prior to Appellant's trial, it was revealed that Dr. Snyder did submit to questioning by Appellant on the Friday before his trial. *See* N.T. Trial, 11/15/04, at 5–11.

who let his attorney withdraw and taking my 10,000.dollars [sic]." *Id.* at 51. The trial court denied the motion. *Id.* When Appellant's jury trial commenced on November 15, 2004, he was not represented although Attorney Trathen was present as standby counsel. N.T. Trial, 11/15/04, at 5, 13. There is nothing on the record to demonstrate that Appellant had made any effort to secure counsel for trial nor that he had a reasonable excuse for failing to do so.

¶ 9 I find that this Court's recent decision in *Commonwealth v. Coleman*, 905 A.2d 1003 (Pa.Super.2006), supports the conclusion that Appellant herein forfeited his right to counsel. In *Coleman*, the defendant was charged with Medicaid Fraud and related offenses in September 2003. Her first attorney was replaced in November 2003 with new counsel who withdrew his appearance in January 2004. The defendant was then instructed to retain counsel for trial in April 2004, and the trial court also directed her to apply for counsel through the public defender, which declared a conflict and further determined that the appellant did not qualify. The trial court found that the defendant had the financial ability to retain counsel but refused to do so, and she was tried without counsel as scheduled.

¶ 10 On appeal, we discussed the distinction between forfeiture of the right to counsel and waiver thereof. Relying in part on *Commonwealth v. Thomas*, 879 A.2d 246 (Pa.Super.2005), we concluded that the defendant had, through her "intentional and dilatory conduct, forfeited her right to counsel" despite the absence of a valid Rule 121 colloquy. *Coleman, supra*, 905 A.2d at 1008.

¶ 11 We also cited *Commonwealth v. Wentz*, 280 Pa.Super. 427, 421 A.2d 796

(1980), *appeal dismissed*, 495 Pa. 616, 435 A.2d 176 (1981), in support of our decision in *Coleman*. In *Wentz*, the appellant was charged with driving under the influence in February 1977 and appeared for arraignment in May 1977 without counsel. The trial court told the appellant to obtain counsel, yet he appeared for trial later that month without counsel. The appellant had asked for "free" counsel but was informed he did not qualify, yet he did nothing to obtain private counsel before trial and claimed he did not know any local attorneys. The case proceeded to trial with the appellant proceeding *pro se*. After his conviction, the appellant argued he was denied his Sixth Amendment right to counsel and should have been granted a continuance to seek representation. We disagreed with the appellant's claim that he had been "coerced" to proceed *pro se. Id.* at 433, 421 A.2d 796. Noting that the appellant did not seek a continuance of his trial, we explained that the appellant "denied himself the assistance of counsel when he failed to take steps to retain counsel despite the admonishment of the trial court." *Id.*

> We hold that a criminal defendant who has been duly notified of the date of his trial, and who has been advised to obtain counsel to represent him and who, nevertheless, appears in court on the scheduled date without counsel and with no reasonable excuse for the lack thereof and no concrete plans for the obtaining of counsel has waived his right to counsel.

*Id.* at 434, 421 A.2d 796.[4]

¶ 12 Here, as in *Coleman*, Appellant admitted he had the financial ability to retain counsel. Nevertheless, in an abundance of caution, the trial court reduced his bail to

---

4. I would note that this Court in *Wentz* did not require a waiver colloquy in order to find

the appellant "waived" his right to counsel. 421 A.2d at 434.

provide him with more than sufficient funds to pay a retainer and consistently admonished Appellant to obtain legal representation. Appellant refused to do so and, despite numerous continuances, he repeatedly appeared before the trial court without counsel, including on the date of trial. Moreover, Appellant was well aware that his case would proceed to trial whether he had retained counsel or not. I, therefore, conclude that Appellant was not deprived of his Sixth Amendment right to counsel and instead forfeited that right based on his intentional and dilatory conduct throughout these proceedings. Accordingly, consistent with *Coleman* and *Wentz*, I would reject Appellant's claim that the trial court committed error and that a new trial is required in this case.[5]

¶ 13 For these reasons, I respectfully dissent.

---

**5.** Although I recognize that the appointment of standby counsel does not eliminate the need for a waiver colloquy when an appellant **waives** his right to counsel, *Commonwealth v.* *Brazil,* 549 Pa. 321, 326, 701 A.2d 216, 219 (1997), such does not affect the analysis of whether Appellant **forfeited** his right to counsel.