J-S05019-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY WALKER | : | |
| | : | |
| Appellant | : | No. 951 WDA 2018 |

Appeal from the PCRA Order Entered June 8, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000359-2015

BEFORE: PANELLA, P.J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.: FILED JULY 25, 2019

Appellant Terry Walker appeals pro se from the order denying his first timely Post Conviction Relief Act[1] (PCRA) petition without a hearing. Appellant challenges the validity of his negotiated no-contest plea to one count of third-degree murder.[2] Specifically, Appellant claims that his plea counsel was ineffective and that the factual basis was inadequate to support his conviction. We affirm.

The Commonwealth recited the following factual background to Appellant's plea:

On February 21, 2015 at approximately 8:00 in the morning Mya Grady [(the victim)] and Brandon Harris were staying at the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(c).

residence of [the victim]. They came out of . . . her home, it was snowing, turned on their vehicles to warm them up, and then [the victim] went back inside the house. Brandon stayed outside and cleaned the cars off. At that time, approximately a few minutes later, [the victim] came out. [The victim] was to go to work at Lady Luck at Nemacolin Woodlands and she was scheduled to work that morning. Furthermore, at that time then [the victim] left from her residence to go to work followed by Brandon Harris in his vehicle, in his truck, followed then by a white Pacifica in which the Commonwealth can prove that [Appellant] was driving, and then followed by another vehicle driven by Erica Harris. They drove down to Fayette Street and [the victim] turned left to go up toward Nemacolin Woodlands in Farmington followed by Brandon Harris who went straight across and then [Appellant] turned and followed the victim . . . . Erica [Harris] then followed Brandon Harris. At that time then Mr. Harris and Erica Harris are out of the picture at that point in time. Throughout the trip up the mountain on Route 40 there were several video cameras on businesses, the first of which was Koval's Plumbing and at that time that tape shows [the victim]'s car going by with a white Pacifica and [Appellant] following her.

\* \* \*

Brandon Harris would testify that he was talking on the phone with [the victim] the whole way up the mountain . . . . Brandon would testify that Erica Harris was in her father's car, which is a Mercury Marquis, and pulled up in back, or basically, across from Brandon in back of him at the time he was talking to [the victim]. He would testify that he had told [the victim] that he was not going to get out of the car because he did not want to have a confrontation with Erica Harris. At the time, Erica Harris and Brandon Harris were estranged from being married. There had been a divorce filed approximately four years before, and they had been estranged and on and off at certain times, but mostly estranged. What then happened was Brandon Harris would testify that Erica Harris drove up, pulled out, and started to drive, and he's out driving around the block, so Brandon told [the victim], I'm gonna put the phone in my pocket, grab my stuff and get in the house because I don't want a confrontation with Erica Harris. Brandon puts the phone in his pocket and it's at approximately 8:28, or between 8:25 and 8:30, and Brandon gets in the house, takes the phone out of his pocket, it's still connected to [the victim]'s phone. At that time Brandon would testify that he's trying to talk to [the victim] and [the victims]'s not answering. He then hangs up and

- 2 -

calls back, cannot get her to answer, and then he sends her a text message later on. He just thought that she didn't want to talk because of the weather, and at the time, at approximately that time Erica Harris had been in Uniontown.

N.T. Guilty Plea Hr'g, 6/6/16, at 11, 13-14.

The victim's car was found by a snowplow driver along Route 40 at approximately 8:30 a.m. The victim was found inside her car with two gunshot wounds to the head.

Appellant was interviewed by police from the afternoon of February 21, 2015, into February 22, 2015. According to the Commonwealth,

> [t]here are four statements that [Appellant] made, one of which was that he didn't have anything do with it, then it started gradually developing, and I can read the synopsis by Trooper [D.M.] Leonard who was one of the interviewers and Trooper [George] Mrosko who was involved in the interview, also. That would clearly show the progression of going from and lying on several occasions to where [Appellant] puts himself in the car [at the time of the shooting], behind [Erica Harris] and then next to her and the shots are fired, [Appellant's] clothing and the inside of the white Pacifica is covered in gunshot residue, we can prove that, we have an expert from R.J. Lee that would testify that the gunshot residue was on his clothes and in the car.

Id. at 17. Although Appellant implicated Erica Harris as the shooter, the Commonwealth asserted that

> based on the testimony of Brandon Harris and the cell phone records that we would have AT&T testify about that Erica Harris was in Uniontown near Brandon Harris' residence. Additionally, we can prove that Erica Harris drove by the VFW in East End, which is in Uniontown on Main Street, at 8:23 a.m. when this incident -- when [the victim] . . . was driving up on Route 40, approximately somewhere near Lick Hollow Park at 8:20. At the same time the roadways are covered with snow, it was snowing pretty heavily, so it would be impossible to traverse from Brandon Harris' house up there in a matter of two or three minutes and

meet up with [Appellant], get in his car, shoot [the victim] and get back downtown at the time that the homicide occurred . . . .

Id. at 15.

On June 6, 2016, Appellant, who was represented by plea counsel, entered a negotiated no-contest plea to one count of third-degree murder. The parties agreed to a sentence of twenty to forty years' imprisonment. Id. at 2. The trial court accepted Appellant's plea, but deferred sentencing for the preparation of a presentence investigation report.

On July 11, 2016, Appellant appeared for sentencing. Before the trial court imposed sentence, the following exchange occurred:

> THE COURT: I have also reviewed the presentence report, and the disturbing thing that I see is that [Appellant]'s version states that: [Appellant] debating whether or not to take this to trial, after the plea was entered. Is there any indication, whatsoever, [to plea counsel] that he does not want to take this plea bargain? Because I do not want a PCRA coming back to me to state that [Appellant] did not knowingly, intelligently or voluntarily enter his plea and wish to do so.
>
> [Plea Counsel]: I can respect that, Your Honor.
>
> THE COURT: We need to establish the record now whether the defendant wishes to withdraw this plea and go to trial. I'm going to give you a few minutes to discuss that with him right now.
>
> [Plea Counsel]: We have discussed it at length numerous times, including with his family, and . . . we have over and over again discussed the matter. We've looked at guidelines, we've looked at all of the possibilities. Literally, there are 80 to 90 hours of review of this case at the minimum that I can really tell you that I've reviewed in order to make a recommendation to my client so he could make an informed decision of whether to plead no contest or not.

THE COURT: Well, . . . why don't we have your client sworn and you can question him for purposes of the record and I may question him, also, in regard to the voluntariness of his plea.

[Plea Counsel]: I think that's a great idea. Thank you.

**[Appellant] WAS DULY SWORN AT THIS TIME AND WAS QUESTIONED AS FOLLOWS:**

\*   \*   \*

[Plea Counsel]: And you understand the nature of the proceedings before the [c]ourt today, correct?

[Appellant]: Correct.

[Plea Counsel]: You would agree we're here today for a sentencing regarding a no contest plea

[Appellant]: Correct.

[Plea Counsel]:   in reference to [the victim], correct?

[Appellant]: Correct.

[Plea Counsel]: And is it fair to say that you and I have spent many, many moments or times at the jail reviewing your case over the past months?

[Appellant]: Correct.

[Plea Counsel]: And would you agree that I have basically, to say an analogy, turned over basically every rock? I've went to the casinos, got all the videotapes, I have all the videotapes of every place that allegedly Ms. Harris was, where you were, where [the victim] was, and I've reviewed all of that with you?

[Appellant]: Correct.

[Plea Counsel]: I've employed out of my own pocket a gun residue expert on your behalf, correct?

[Appellant]: Correct.

[Plea Counsel]: I've employed out of my own pocket a physician's assistant who would have found what she would believe your mental condition was during the approximately 12 hours of what I would call interrogation?

[Appellant]: Correct.

[Plea Counsel]: And based upon our discussions and reviewing this matter over and over again with you and your family is it your decision to voluntarily, knowingly and intelligently waive your right to a trial and after weighing the factors of what the result may be, which could be the electric chair, but not reality anymore, but could be life in prison, and life in Pennsylvania means life, you understand that, correct?

[Appellant]: Correct.

[Plea Counsel]: And do you wish to enter—well, you did enter a no contest plea and that's for Third Degree Murder, do you understand all of that?

[Appellant]: Correct.

[Plea Counsel]: And that would give you at some point the hope of being a free man again if you're under good behavior for twenty (20) to forty (40) years, we've reviewed all of that, correct?

[Appellant]: Correct.

[Plea Counsel]: And would you agree that we've reviewed your presentence investigation report?

[Appellant]: Correct.

\* \* \*

[Plea Counsel]: Your Honor?

THE COURT: [to Appellant] Are you satisfied with the representation that [plea counsel] has provided you?

[Appellant]: Yes, ma'am.

THE COURT: And why is it that you told the Adult Probation Office that you were debating whether or not to take this case to trial?

THE DEFENDANT: I was thinking about it but since I know so much about it, I mean, all fingers point at me, so I'll just take the twenty (20) to forty (40), I know about it.

THE COURT: Okay. Well, did you make that statement after you pled pursuant to this interview?

[Appellant]: No. He came to me earlier.

THE COURT: Okay. He came to you earlier?

[Appellant]: About two weeks ago.

THE COURT: The plea bargain date was June 6th.

[Appellant]: I think he came like a day or two after that.

[Appellant]: And Your Honor, if I may politely interrupt for the record, I did go to speak with [Appellant] after that to clarify whether or not he wished to take the no contest plea or go to trial. He wished to take the no contest plea.

THE COURT: So a day or two after the plea you were still debating whether to go forward with your sentencing or request the [c]ourt to withdraw your plea?

[Appellant]: No, I didn't request the [c]ourt—

THE COURT: But you were thinking about it?

[Appellant]: I was talking to my family about it.

THE COURT: And you were thinking about it a day or two after the plea?

[Appellant]: No, I just mentioned it to them.

THE COURT: Well, that's a very serious thing to mention and that's giving me pause because you're telling the Probation Office you're debating whether or not to take this case to trial. I have to be absolutely sure that you want to accept the no contest plea to Third Degree Murder.

[Appellant]: Yes.

THE COURT: Do you want to accept it?

[Appellant]: Yes.

THE COURT: And after you spoke with the Probation Office did you have the opportunity again to speak with counsel?

[Appellant]: Yes, I talked to him about it, yes.

THE COURT: Okay. What you did on the 6th of June and still want to be sentenced to today, is that knowingly done by you?

[Appellant]: Yes.

THE COURT: You've weighed all of the alternatives?

[Appellant]: Yes.

THE COURT: Is it intelligently done by you?

[Appellant]: Yes, Your Honor.

THE COURT: And is it voluntarily done? There's no coercion or duress upon you to enter into this plea?

[Appellant]: Correct.

THE COURT: And you are doing this of your own free will?

[Appellant]: Yes.

N.T. Sentencing H'rg, 7/11/16, at 6-8, 9-11.  At the conclusion of the hearing, the trial court imposed the agreed-upon sentence of twenty to forty years' imprisonment.  Appellant did not file a post-sentence motion or a direct appeal.

Appellant timely filed a pro se PCRA petition that was docketed July 12, 2017.  Appellant asserted, in relevant part, that plea counsel "was well aware that all evidence pointed toward Eri[c]a Harris being the prime suspect in this case," but failed to present any argument on Appellant's behalf.  PCRA Pet., 7/12/17, at 3.

The PCRA court appointed counsel, who filed a motion to withdraw from representation and a Turner/Finley[3] brief on September 13, 2017.  On

_____

[3] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc).

- 8 -

September 18, 2017, the PCRA court granted PCRA counsel's motion to withdraw.[4]

On May 1, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition. Appellant filed a pro se "statement of matters complained on appeal" that was docketed May 25, 2018. Appellant alleged:

> Ineffectiveness of counsel for failing to bring up PCRA claims that were unaddressed and asked to do.
>
> Representation coerced [Appellant] into a guilty plea due to [plea counsel]'s failure to adequately represent him.

Statement of Matters Complained of on Appeal, 5/25/18. The PCRA court dismissed Appellant's petition on June 8, 2018.[5]

Appellant timely appealed and complied with the PCRA court's order to file and serve a Pa.R.A.P. 1925(b) statement. Appellant's Rule 1925(b) statement was identical to the one Appellant prematurely filed in May 2018. This appeal followed.

Appellant, in his pro se brief, raises two issues. See Appellant's Brief at 14 (unpaginated). In sum, Appellant first argues that plea counsel was ineffective for failing to (1) meet and consult with him, (2) adequately prepare, (3) investigate witnesses and evidence, and (4) adopt a viable trial strategy.

---

[4] Appellant did not respond to appointed counsel's motion to withdraw or the PCRA court's order permitting PCRA counsel to withdraw.

[5] Although styled as a Pa.R.A.P. 1925 statement, we regard Appellant's May 25, 2018 statement as a pro se response to the PCRA court's Rule 907 notice.

Id. at 16-18. Appellant also suggests that PCRA counsel failed to raise these claims. See id. at 14, 16. Second, Appellant asserts that the factual basis for his conviction was so weak and inconclusive that the Commonwealth could not have established all elements of third-degree murder. Id. at 19.

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Ousley, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." Commonwealth v. Koehler, 36 A.3d 121, 131 (Pa. 2012) (citation omitted).

> To obtain relief on an ineffectiveness claim, a petitioner must establish:
>
> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.
>
> [Plea] counsel is presumed to be effective, and [the petitioner] bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

Commonwealth v. Barndt, 74 A.3d 185, 192 (Pa. Super. 2013) (citations omitted).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [the

defendant] to enter an involuntary or unknowing plea." Commonwealth v. Allen, 732 A.2d 582, 587 (Pa. 1999) (citation omitted). "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." Commonwealth v. Houtz, 856 A.2d 119, 122 (Pa. Super. 2004) (citations omitted). Although not constitutionally mandated, a proper plea colloquy ensures that a defendant's guilty plea is truly knowing and voluntary. Commonwealth v. Maddox, 300 A.2d 503, 504 (Pa. 1973) (citation omitted).

"To determine a defendant's actual knowledge of the implications and rights associated with a guilty plea, a court is free to consider the totality of the circumstances surrounding the plea." Allen, 732 A.2d at 588-89. "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." Commonwealth v. Pollard, 832 A.2d 517, 523 (Pa. Super. 2003) (citation omitted).

At the outset, we note that Appellant's arguments could be deemed waived on several bases. First, Appellant failed to preserve any specific claims in his petition or response to the Rule 907 notice. See Ousley, 21 A.3d at 1245. Second, Appellant's Rule 1925(b) statement was vague. See Pa.R.A.P. 1925(b)(4)(ii). (vii); Commonwealth v. Phillips, 141 A.3d 512, 522 (Pa. Super. 2016). Third, Appellant's appellate arguments were undeveloped. See

Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009) (indicating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived" (citations omitted)).

Nevertheless, having reviewed the record, Appellant's arguments, and the relevant law, we discern no error in the PCRA court's decision to deny relief. The record contradicts Appellant's assertions that plea counsel failed to consult, investigate, or prepare resulted in an involuntary or unknowing plea. See Pollard, 832 A.2d at 523. Here, the trial court conducted an extensive colloquy at the guilty plea hearing, and it supplemented the colloquy immediately before sentencing. During the supplemental colloquy, plea counsel discussed the extent of his consultations with Appellant and investigation of the evidence. See N.T. Sentencing Hr'g at 6-7. Appellant stated that he was satisfied with plea counsel's representation and acknowledged that "all fingers point to me." See id. at 9. Appellant also stated that his decision to plead no contest was not coerced. Id. at 11. Therefore, the PCRA court properly rejected Appellant's claims of ineffective assistance of plea counsel. See Ousley, 21 A.3d at 1242.

Regarding Appellant's assertion that PCRA counsel was ineffective, it is well settled that a petitioner cannot establish a layered claim of ineffective assistance of counsel if he fails to demonstrate prior counsel's ineffectiveness. See Commonwealth v. Tedford, 960 A.2d 1, 13 (Pa. 2008). Because

Appellant's claims of plea counsel's ineffectiveness lack merit, his assertion of PCRA counsel's ineffectiveness must also fail. See id.

Lastly, to the extent Appellant contends that the factual basis of his plea was inadequate, the Commonwealth's recitation of the facts established that Appellant shot the victim and killed the victim, and that Appellant acted with malice. See 18 Pa.C.S. § 2502(c); Commonwealth v. Santos, 876 A.2d 360, 363 (Pa. 2005) (noting that "to convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought" (citation omitted)). Therefore, Appellant's challenge merits no relief.

Order affirmed.


President Judge Panella joins the memorandum.

Judge Strassburger concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/25/2019

- 13 -