COMMONWEALTH of Pennsylvania, Appellee,

v.

Melanie R. HOUTZ, Appellant.

Superior Court of Pennsylvania.

Argued June 23, 2004.
Filed July 28, 2004.

James L. Best, Sunbury, for appellant.

BEFORE: MUSMANNO, GANTMAN, and BECK, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Melanie Houtz, asks us to determine whether the trial court erred when it compelled her to proceed to trial without counsel and without first conducting a proper colloquy on the record pursuant to Pa.R.Crim.P. 121 to ensure her knowing, voluntary and intelligent waiver of counsel. We hold Appellant did not knowingly, voluntarily, and intelligently waive her right to counsel, under prevailing Pennsylvania law. Accordingly, we vacate Appellant's judgment of sentence, and remand the matter for a new trial.

¶ 2 The relevant facts and procedural history of this case are as follows. According to the certified record, Appellant lost a "wet t-shirt" contest to the victim at a motorcycle club barbeque. Appellant's fiancé and the victim's boyfriend engaged in an altercation at the same barbeque. A few months later, Appellant and the victim were in a bar in Selinsgrove, Pennsylvania, where Appellant was throwing a party for her fiancé. Still upset over her loss in the contest and the altercation, Appellant banged a bottle on a table, approached the victim, and threatened to kill her. Appellant then struck the victim in the head with the bottle. The bottle broke, and the victim sustained a cut just below her right eyebrow, which required eight stitches.

¶ 3 On March 28, 2002, Appellant was charged with aggravated assault (serious bodily injury)[1], recklessly endangering another person[2], simple assault[3], and harassment[4]. The Commonwealth amended the charges against Appellant on June 26, 2002, to add a charge of aggravated assault (deadly weapon).[5] On June 26, 2002, Appellant entered a counseled guilty plea, but withdrew it on August 27, 2002.

¶ 4 Following a jury trial on November 21, 2002, Appellant was convicted of aggravated assault (serious bodily injury), recklessly endangering another person, simple assault, and harassment. Appellant was found not guilty of aggravated assault (deadly weapon). On November 26, 2002, however, the trial court found a juror in contempt for violating sequestration. The court declared a mistrial and Appellant was granted a new trial on January 2, 2003.

¶ 5 Subsequently, Appellant's counsel moved to withdraw from the case. The court granted counsel's motion on January 13, 2003, and the matter was continued to April 14, 2003. Appellant was ordered to apply to the Public Defender's office for representation or hire private counsel as soon as possible.

¶ 6 On April 14, 2003, Appellant appeared for jury selection without counsel because her household income exceeded the limit set by the Snyder County Public Defender, and she had not yet hired private counsel. The trial court continued the matter until July 14, 2003, so Appellant could retain counsel. The court ordered Appellant to appear at that time, noting Appellant's stated intention to engage private counsel.

¶ 7 On July 14, 2003, Appellant failed to appear. The court issued a bench warrant for her arrest. Appellant appeared before the court without counsel on July 15, 2003. The trial court set bail at $25,000.00 and granted Appellant a continuance until October 14, 2003, giving her yet another op-

---

1. 18 Pa.C.S.A § 2702(a)(1).

2. 18 Pa.C.S.A § 2705.

3. 18 Pa.C.S.A § 2701(a)(1).

4. 18 Pa.C.S.A § 2709(a)(1).

5. 18 Pa.C.S.A § 2702(a)(4).

portunity to hire private counsel. Appellant posted bail on July 23, 2003.

¶ 8 On October 14, 2003, Appellant appeared for jury selection without counsel. The trial court scheduled Appellant's trial for November 14, 2003.

¶ 9 On November 14, 2003, Appellant again appeared *pro se* and requested counsel. The court declined to appoint counsel and, by its own concession, did not fully colloquy Appellant before proceeding with her second trial. The jury convicted Appellant of aggravated assault, recklessly endangering another person, simple assault, and harassment.[6] On the same day, the court sentenced Appellant to four (4) to ten (10) years' incarceration for the aggravated assault conviction; her other convictions merged for sentencing purposes. Appellant was taken into custody, and counsel for the instant appeal was appointed on December 1, 2003. On December 5, 2003, Appellant timely filed her appeal to this Court.

¶ 10 Appellant presents the following issue for our review:

WHETHER THE TRIAL COURT VIOLATED [APPELLANT]'S SIXTH AMENDMENT RIGHT OF COUNSEL BY REFUSING TO APPOINT HER COUNSEL FOR TRIAL AND FAILING TO CONDUCT AN ADEQUATE COLLOQUY AS TO THE ELEMENTS OF THE OFFENSES CHARGED?

(Appellant's Brief at 6).

¶ 11 "Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." *Commonwealth v. Payson*, 723 A.2d 695, 699–700 (Pa.Super.1999). "Deprivation of these rights can never be harmless." *Id.* The constitutional right to counsel may be waived, but this waiver is valid only "if made with knowledge and intelligence." *Id.* at 700 (citing *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (1975)).

¶ 12 "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." *Payson, supra* at 700 (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995)). Moreover,

the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer.

*Payson, supra* at 700 (quoting *Commonwealth v. Monica*, 528 Pa. 266, 273, 597 A.2d 600, 603 (1991)). Thus, for this Court "to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right." *Payson, supra* at 700 (citing *Commonwealth v. Hill*, 492 Pa. 100, 422 A.2d 491 (1980)).

¶ 13 Appellant argues the trial court forced her to proceed to a jury trial while acting as her own attorney despite repeated requests for appointment of counsel. Appellant contends the court, by its own concession, did not conduct a proper colloquy before her November 14, 2003 trial, particularly with respect to the elements of the crimes charged and the potential penalties. Appellant submits she does not have a secondary education, had

---

6. The Commonwealth did not pursue the aggravated assault (deadly weapon) charge at Appellant's November 14, 2003 trial.

no understanding of the charges against her and no idea as to how to present a defense. She not only failed to raise defenses or preserve issues, but also she was made to appear before the jury in the worst possible light. Appellant maintains the deprivation of her right to counsel compels reversal and remand for a new trial.[7]

¶ 14 In response, the Commonwealth submits Appellant was adequately colloquied about the crimes charged and potential penalties when she entered her prior guilty plea. Moreover, both the court and the Commonwealth insist Appellant was aware of the essential aspects of her case because she already had one trial. The Commonwealth reasons the entire record, not just the record of Appellant's second trial, reveals that the court made her aware of all the areas required by Rule 121, albeit not in the same proceeding. Therefore, the Commonwealth concludes Appellant's waiver of counsel was knowing and intelligent. We disagree.

■ ¶ 15 This case involves the application of Pa.R.Crim.P. 121(c) which provides:

When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.

Pa.R.Crim.P. 121(c). To ensure that a waiver of counsel is knowing, voluntary, and intelligent, the defendant must be colloquied on her understanding of at least the following six (6) elements:

(1) whether the defendant understands that [she] has a right to be represented by counsel and the right to free counsel if [she] is indigent, (2) whether the defendant understands the nature of the charges against [her] and the elements of each of those charges, (3) whether the defendant is aware of the permissible range of sentences and/or fines for the offenses charged, (4) whether the defendant understands that if [she] waives the right to counsel [she] will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules (5) whether the defendant understands that there are possible defenses to these charges [of] which counsel might be aware, and if these defenses are not raised they may be lost permanently, and (6) whether the defendant understands that, in addition to defenses, the defendant has other rights that, if not timely asserted, may be lost permanently and that if errors occur and are not objected to or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

■ *Commonwealth v. McDonough,* 571 Pa. 232, 236, 812 A.2d 504, 506–07 (2002) (citing *Starr, supra;* Pa.R.Crim.P. 121 cmt.).[8] The trial judge need not literally be the one to pose the questions to the defendant, but the text of Rule 121(c) re-

---

7. Appellant's Rule 1925(b) statement and the Summary of Argument section in her appellate brief include contentions that the court abused its discretion in sentencing her to 4–10 years, although she had no prior criminal record and was the primary support of two children. Appellant claims her sentence was motivated by the court's hostility. Appellant fails to address or develop this contention in the Argument section of her brief. Thus, we decline to address it.

8. The *McDonough* Court also noted the colloquy must contain "a clear demonstration of the defendant's ability to understand the questions posed to [her] during the colloquy," which might include inquiries into the defendant's "age, educational background, and basic comprehension skills." *Id.* at 236 n. 1, 812 A.2d at 507 n. 1.

quires the judge to ascertain the quality of the defendant's waiver. *McDonough, supra* at 238, 812 A.2d at 508.

¶ 16 "Regardless of the defendant's prior experience with the justice system, a penetrating and comprehensive colloquy is mandated." *Commonwealth v. Owens*, 750 A.2d 872, 876 (Pa.Super.2000). "The question of waiver must be determined regardless of whether the accused can or cannot afford to engage counsel." *Payson, supra* at 701 (quoting *Commonwealth · v. Ford*, 715 A.2d 1141, 1144 (Pa.Super.1998)). Failure to conduct a thorough on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error. *Payson, supra* at 701.

¶ 17 In *Payson*, the defendant was apprehended while burglarizing an occupied structure. A public defender was appointed to represent Payson.[9] Payson posted bond and was released on bail. One week later, Payson appeared *pro se* before the Magistrate and executed documents waiving his right to a preliminary hearing and his right to counsel for the limited purpose of that proceeding. Eight months later, Payson appeared *pro se* before the trial court to enter a guilty plea. The assistant district attorney questioned Payson briefly about his desire to proceed without an attorney. Payson indicated he did not qualify for a public defender because he had an income and he could not afford privately retained counsel. Payson executed an oral and written colloquy. The written plea colloquy informed Payson he had the right to counsel and if he proceeded to the plea without an attorney, he was waiving his right. This was the extent of Payson's waiver of counsel colloquy prior to entry of his plea. The court then ac-cepted Payson's non-negotiated guilty plea, deferred sentencing for the preparation of a pre-sentence report, and reminded Payson of his right to hire counsel for sentencing or to proceed *pro se*. Payson appeared for sentencing, at which time he was asked if he wanted to proceed *pro se*. Payson again explained he made too much money to qualify for a public defender but not enough to afford private counsel. Payson said he had no other choice but to continue *pro se*. Payson also signed a supplemental form advising him of his post-sentence rights. The court reviewed Payson's pre-sentence report which included his lengthy criminal record, a victim impact statement, and a notation that Payson was on federal probation when he committed the current offense. The district attorney asked for an aggravated range sentence. The court made several comments about Payson's criminal history, which Payson immediately contested. Nevertheless, the court sentenced Payson outside the guidelines to 7–20 years' incarceration. Payson filed a timely and counseled notice of appeal.

¶ 18 On appeal, Payson argued he had not validly waived his constitutional right to counsel either at his plea hearing or at sentencing. The Commonwealth argued a totality of the circumstances analysis applied to Payson's colloquies to demonstrate that at one time or another during the pendency of his case, Payson was made aware of all six areas of inquiry set forth in the comment to Rule 121 (formerly Rule 318). The Commonwealth further maintained Payson's waiver of counsel in conjunction with his preliminary hearing demonstrated his awareness of the omitted three areas (four through six), which in any event were not relevant to the entry of

---

**9.** The record revealed no active participation by appointed counsel until after the court sentenced Payson.

a guilty plea. Finally, the Commonwealth concluded Payson's waiver of counsel was valid because of his familiarity with the criminal justice system.

¶ 19 In reviewing Payson's arguments, this Court explained:

Although we had previously held that a defendant who appears *pro se* with no reasonable excuse for the lack of an attorney effectively waives the right to counsel, in [*Commonwealth v. Carothers*, 450 Pa.Super. 208, 675 A.2d 734 (1996)], we clarified that this does not in any way diminish a trial court's duties under Rule [121]. We stated that where, as here, a defendant asserts his inability to afford counsel despite being ineligible for free representation through the public defender, such an assertion constitutes a reasonable excuse. Therefore, as a reasonable excuse, defendant's assertion of his inability to afford counsel is completely irrelevant to whether the requirements for an effective waiver of counsel have been met. Additionally we elaborated:

> Were we to end our inquiry at this point, we would enable defendants to guarantee themselves a basis for a new trial merely by asserting an inability to afford counsel, or other "reasonable excuse," and proceeding *pro se* at...trial. To obviate such manipulation by ensuring a knowing, voluntary and intelligent waiver of counsel, **the trial court must comply with the dictates of Rule [121]**.

Those dictates, we reiterated, require the trial court formally and searchingly to inquire into the six areas covered by the Comment to Rule [121].

*Payson, supra* at 702 (internal citations omitted) (emphasis in original). The Court held: "[W]e may not apply a totality analysis to a waiver of counsel colloquy."

*Id.* at 704 (citing *Commonwealth v. Brazil*, 549 Pa. 321, 701 A.2d 216 (1997)).

¶ 20 In reviewing the Commonwealth's arguments, the *Payson* Court stated:

Again, instead of looking to the totality of the circumstances, under which [the Commonwealth's] observations would be relevant, the law in this area considers only compliance with the mandated procedures. The case law insists that an effective waiver of counsel must include a colloquy that contains inquiry into the six areas listed above, conducted on the record.... Any shortcoming relative to this colloquy cannot be gauged to the quality of an accused's self-representation nor justified on the basis of his prior experience with the system.

*Id.* at 704 (internal citations and quotation marks omitted). Thus, the Court vacated Payson's judgment of sentence and remanded the case for a new trial.

¶ 21 In the instant case, the following exchange occurred at Appellant's November 14, 2003 trial:

THE COURT: You do not have an attorney?

APPELLANT: No.

THE COURT: Do you understand that you do have the right to have an attorney represent you in this matter?

APPELLANT: Yes. I would like this on the record before I say what I'm about to say. I am not doing my opening statement for numerous reasons. I want the Court to appoint me an attorney. It is my Constitutional right to be represented by one. I have been refused representation twice by the Public Defender. I have been to private attorneys and cannot afford their fees, and no one will do it for free. I was forced to pick a jury myself or I would have been incarcerated. I am not educated in law and do not know anything about repre-

senting myself. So I am asking that the Court appoint me an attorney today.

THE COURT: All right. We're going to take a recess. I'm going to have the Public Defender staff come up here, and we'll review what happened with them.

* * *

THE COURT: Accompanying me into the courtroom is Michelle Kreitzer, who is the administrative assistant in the Public Defender's Office. At my request, they came to my chambers and brought Ms.—their file regarding [Appellant]. The file indicates that the Public Defender's Office received a—an application from [Appellant] on January 13, 2003, and she was told that she would need to provide finances, income. She was denied representation on January 31st because of unverified income. On April 14th, [Appellant] again submitted an application for representation, and was denied representation on that same day because the income in her household exceeded the applicable guidelines followed by the Public Defender's Office. She again applied for representation on October 30th, 2003, and the note on the application says— and this is from Ms. Kreitzer, according to what she told me in chambers, and if I misstate anything, please correct me. Hand delivered, meaning hand delivered to [Appellant]. Told to provide verification of food stamps, which she was allegedly receiving. There is a phone message attached dated November 4th, allegedly from [Appellant], with a new phone number. Is—the message reads new phone number. Doesn't know her address. Can't send info. From Street of Shops—B slash C. I'm assuming that means because—she didn't sell anything last month. Has a note from them. And the application indicates that [Appellant] was self-employed. It indicates that she had, on the application, said nothing now in terms of gross weekly income. There is a letter in the file from John H. Reed, the chief public defender addressed to [Appellant]. Dear [Appellant], I have reviewed your application to the Public Defender's Office. Based upon the fact that you have potential income slash assets as a self-employed business owner, and that your Court records indicate that you have funds to retain private Counsel, and your failure to present any documentation supporting a conclusion to the contrary, I have determined that you are not eligible for public defender services. There is another phone message attached to that letter. [Appellant] allegedly called on January—I'm sorry—November 5th, 2003. The message is doesn't understand why she was denied. Then there's a handwritten note on it, 11/6/03, called, left msg, period, and then the initials JHR, John H. Reed.

THE COURT: [Appellant], the Snyder County Public Defender's Office has determined that you do not meet their income eligibility requirements.

APPELLANT: Can I say something?

THE COURT: Just hold on a minute. They have determined that you do not meet their income eligibility requirements. The Public Defender's Office makes that determination. We do not— the Court does not appoint separate Counsel. The first—if someone is— qualifies for court-appointed Counsel, the Public Defender's Office will represent them at no cost. The Public Defender's Office is excused from that representation, even if somebody is indigent if there is a conflict or something like that. There has been no representation of a conflict. You are a sole Defendant. You don't have any codefendants. So that is the office that has the responsi-

bility of making the determination as to whether they are going to represent you or not. Bear with me just one minute, please. You had something you wanted to say, [Appellant]?

APPELLANT: Yes. I want this on the record also.

THE COURT: Everything that you say is going to be on the record, ma'am. Everything I say is going to be on the record. Everything that Mr. Kerstetter says is going to be on the record, and anything any witness says is going to be on the record, so you don't need to keep repeating that.

APPELLANT: I just want to make sure. First of all, I would like to say one thing. There was one thing—very important thing left out. I did speak personally with John Reed. He did call me back. We had a 20-minute phone conversation, and I would like if he was present, but he called me back and we talked about everything. And he said about the income and everything, that I am below the income. I explained to him everything, how they cannot do a printout from where I worked. I explained everything. I tried getting a printout. They do not—we did not sell anything at the Street of Shops in Lewisburg. He also said—he also said that—is he—is he here today?

MS. KREITZER: No, he's not.

APPELLANT: Well, I would like for him to be here. He—his—I asked him, I said are you refusing me for my income? Is my income too high? One thing out of his mouth was I am—he said we have heard rumors that you own a vehicle. I do not own a vehicle at all. And I said that on the application. He said he felt that I was lying on my application. I told him he needed to prove that. I am not lying on my application. I said he can call the IRS, who-

ever, and see how much I have made with my business. After about 10 minutes, he became very pleasant then, and he said well, two weeks is not enough time to prepare for a trial. That was his ending—pretty much, he said I would like to represent you, but I can't. Two weeks is not enough time.

THE COURT: When did this—when did this conversation occur?

APPELLANT: That—what date was that? That was after I called the secretary back again wondering why I was not getting a phone call back.

THE COURT: What—when was it, ma'am?

APPELLANT: Today is Friday. It would have been last Friday when he finally returned my call. I believe it was Friday.

THE COURT: Do you have any knowledge about any of that?

MS. KREITZER: I know he did talk to her. He didn't give me any notes from the conversation, so.

APPELLANT: Also—

THE COURT: Just a minute. Where might I reach him now?

MS. KREITZER: I believe he's in a seminar in Mechanicsburg. I don't really have a number for him, other than to try his cell phone number.

APPELLANT: He did say he was busy.

THE COURT: Ma'am. Would you try and reach him, please?

MS. KREITZER: Sure.

\* \* \*

THE COURT: I just spoke with Mr. Reed by telephone. He confirmed that, in fact, he had a conversation with [Appellant], that he told her that—that the Public Defender's Office had made a determination that she did not meet their eligibility requirements, that he

would not—that the office would not be representing her. And he said that as an added element, he informed her that someone could not take over a file on short notice and do a competent job. So the determination has been made by the Public Defender's Office, ma'am, that they will not be representing you. There is no other—I am not going to appoint an attorney, to represent you because I've indicated to you that if someone qualifies for court-appointed Counsel in a criminal case in Snyder County, and there is no conflict of interest that would preclude the Public Defender's Office from representing them, the Public Defender's Office is the office that will do it. They have made the determination you don't meet their requirements, and so you will not be represented by them.

THE COURT: You obviously understand your rights to Counsel either to hire an attorney or to have court-appointed Counsel if you meet the income eligibility requirements; is that correct?

APPELLANT: I understand that I cannot afford an attorney.

THE COURT: Okay. And do you understand that if you meet the income eligibility requirements, you could be represented by Court-appointed Counsel?

APPELLANT: I know what the attorney told me.

THE COURT: Do you understand what I'm saying to you, ma'am?

APPELLANT: I understand what you're saying to me.

THE COURT: Okay.

APPELLANT: And I know that the secretary out and out lied about the conversation that we had.

THE COURT: All right. Do you understand that it may be to your benefit to have an attorney, given that an attor-

ney would be more familiar with the laws of Pennsylvania and the Rules of Procedure that are followed in these matters?

APPELLANT: I am not proceeding with this trial.

THE COURT: Ma'am, would you please answer the questions that I am asking you, and if you don't understand the questions, tell me you don't understand them.

APPELLANT: I don't understand the questions.

THE COURT: All right. Do you understand that an attorney knows more about the law probably than you do?

APPELLANT: Of course. Yes, they do.

THE COURT: Do you understand that because of that, it might be better to have an attorney?

APPELLANT: Yes. I do know that.

THE COURT: And do you understand that there may be claims or defenses or other issues with which an attorney might know—an attorney might know more about them, and if they are not raised when they should be, the ability to raise them at a later point in time may be lost. Do you understand that?

APPELLANT: No.

THE COURT: Well, certain things have to be done in certain time frames in—in court. As you were advised when you waived your arraignment, requests for discovery, requests that the Commonwealth make available to you information that they have in their possession and control has to be filed at a certain time. Any pretrial motions which you may wish to file have to be filed—filed at a certain time. If you wish to make objections to questions that are asked or testimony, those objections need to be made at certain times. And if they are

not made or if those things are not done when they should be, you may lose the ability to do them at a later point in time. Do you understand that?

APPELLANT: No.

THE COURT: What don't you understand, ma'am?

APPELLANT: All of it.

THE COURT: I'm not going to explain it again, ma'am. I will one more time. You have to do certain things at certain times. Do you understand that?

APPELLANT: Yes.

THE COURT: Do you understand that because of the Rules of Criminal Procedure, if you don't do things when you are supposed to, you may not be able to do them at a later point in time?

APPELLANT: Yes.

THE COURT: Okay. Do you understand that if you decide to represent yourself in this matter, you will be held to the same level of knowledge and understanding that an attorney would be held to. And by that, I mean I can't tell you what you should or should not be doing. I can't give you any legal advice. I can't cut you any breaks in terms of following the Rules of Procedure or the laws of the Commonwealth. Do you understand all of that?

APPELLANT: Yes. And I understand that I'm not educated in the law either.

THE COURT: Okay. You don't have private Counsel here. You haven't hired an attorney. The determination has been made by the Public Defender's Office that they are not going to represent you.

APPELLANT: Because of my income?

THE COURT: They have made the determination, ma'am, and we've already covered that. So are you going to represent yourself in this matter?

APPELLANT: No, I am not.

THE COURT: And then how do you—what do you propose to do?

APPELLANT: I don't know. I need representation. I cannot be denied.

THE COURT: Actually, ma'am, you can be denied. You can hire an attorney, and we've already—which you have not done.

APPELLANT: I—

THE COURT: Ma'am—

APPELLANT: My income is low.

THE COURT: Ma'am—

APPELLANT: Investigate me.

THE COURT: Ma'am, be quiet until I finish. You have not hired an attorney, which is your right. The Public Defender's Office has made a determination that they are not going to represent you. They have asked for information from you, according to what I have been informed, that you have not provided that information. So we are going to have a trial today, and unless you have another option that you can inform me of, the option that you have at this point is to represent yourself. Do you understand that?

APPELLANT: I have an idea.

THE COURT: What's that?

APPELLANT: We can get the video that was destroyed. That's—.

THE COURT: Ma'am, that's not the issue before us right now.

APPELLANT: That's a serious issue.

THE COURT: Which has—

APPELLANT: That's obstruction of justice.

THE COURT: Ma'am, that issue has already been addressed by this Court, and a decision has been made. Are you going to represent yourself in this matter?

APPELLANT: Not without the video.

THE COURT: All right. I'm going to call the jury in, ma'am. We are going to proceed with this matter. Your option is to either sit there silently or to represent yourself. There have been numerous continuances in this matter, and I think it might just be helpful to put all this on the record.

* * *

THE COURT: Ma'am, I have done everything that would reasonably be expected of me, I believe, by an appellate court in terms of giving you the opportunity to secure Counsel, etc.

APPELLANT: I have been quite—

THE COURT: Ma'am—

APPELLANT:—ill

THE COURT: Ma'am, if you interrupt me one more time, you're going to be in trouble.

APPELLANT: You can't incarcerate me for being sick.

THE COURT: Ma'am, we are going to proceed with the trial in this matter. Your options are to represent yourself or to sit there silently. That is up to you. But we are going to proceed in this matter at this time. What's going to happen is that the jury is going to be called in. I will give them some preliminary instructions. I will inform them that Mr. Kerstetter will have the opportunity to address an opening statement to them. I will inform them that you will have the opportunity to do that either immediately after Mr. Kerstetter, or you can delay it to a later point in the trial which would be the beginning of the—any case that you would decide to put on. Witnesses will then be called and we will proceed accordingly. I will also inform them that you are—that you do not have an attorney, that you apparently are going to be representing yourself, which is your absolute right under

the Constitution of the Commonwealth and the Constitution of the United States, and they should not think any more or less of you or this case because you are doing so. Do you have any questions about what I have just said to you?

APPELLANT: No, I do not.

(N.T. Trial, 11/14/03, at 3–17).

¶ 22 Examination of this exchange demonstrates that the trial court failed to cover all of the areas set forth in the comment to Rule 121, to ascertain whether Appellant was executing a knowing, voluntary and intelligent waiver of counsel. *See* Pa.R.Crim.P. 121(c). In particular, the trial court did not ensure Appellant understood the nature and elements of the charges and the range of penalties the court could impose. The trial court admits Appellant was not colloquied at her November 14, 2003 trial "as to her understanding of the elements of each of the offenses and the possible penalties involved." (Trial Court Opinion, dated February 9, 2004, at 4). Thus, the waiver of counsel colloquy was flawed.

¶ 23 Nevertheless, the Commonwealth and the trial court both point to Appellant's prior proceedings and her extensive interaction with the court as evidence of a knowing, voluntary, and intelligent waiver of counsel at her November 14, 2003 trial. This totality of the circumstances analysis is essentially the one disavowed in *Brazil, supra* and *Payson, supra.* As in *Payson,* we empathize with the court's plight, where Appellant appeared before the court without counsel, after having been given several generous continuances to obtain an attorney. This record demonstrates a sequence of events that might easily have tested the patience of any court. Nevertheless, we are compelled by prevailing Pennsylvania law to vacate Appellant's

judgment of sentence and remand for a new trial.

¶ 24 Upon remand, we direct that Appellant's case be assigned to a different jurist. If Appellant appears again before the court without counsel or decides to proceed *pro se,* we instruct the assigned judge to conduct a full colloquy in accordance with the applicable rules, assign stand-by counsel, and employ other safeguards to avoid further manipulation of the system. *See Payson, supra* at 705 (suggesting various minor changes in routine operations of court to guard integrity of proceedings and enhance chance of success on appeals in these kinds of cases).

¶ 25 Based upon the foregoing, we hold the trial court erred when it compelled Appellant to proceed to trial *pro se* without first conducting a proper colloquy on the record pursuant to Pa.R.Crim.P. 121 to ensure her knowing, voluntary and intelligent waiver of counsel. Accordingly, we vacate Appellant's judgment of sentence and remand the case for a new trial.

¶ 26 Judgment of sentence vacated; case remanded for a new trial. Jurisdiction is relinquished.