J-S27027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN MAMUZICH | : | |
| | : | |
| Appellant | : | No. 1966 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 8, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001415-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN JOHN MAMUZICH | : | |
| | : | |
| Appellant | : | No. 2661 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 8, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001414-2021

BEFORE:   LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 4, 2025**

Appellant Kevin John Mamuzich appeals from the judgments of sentence imposed following his convictions for eight counts of burglary and related offenses.  On appeal, Appellant challenges the trial court's denial of his request to waive counsel, joinder of criminal informations, sufficiency of the evidence,

_____

[*] Former Justice specially assigned to the Superior Court.

and the weight of the evidence. After careful review, we vacate the judgments of sentence and remand for a new trial.

By way of background, Appellant was arrested and charged with multiple offenses related to the burglary of several small retail businesses at two separate criminal complaints. *See* Criminal Complaints, 3/4/21; 3/22/21. On May 18, 2022, Appellant appeared *pro se* at a pretrial conference and declined the trial court's offer to appoint counsel. *See* N.T., Pretrial Conf., 5/18/22, 2, 8, 20. Thereafter, the Honorable Jennifer R. Sletvold conducted a colloquy in which she informed Appellant of his right to counsel; explained to Appellant that, "You are taking a risk to your own detriment against your own self interest if you represent yourself because you are not trained in the law[;]" and then reviewed all charges and potential sentences with Appellant. *Id.* at 11-15, 22-27. After Appellant indicated that he understood the risks but nonetheless desired to proceed *pro* se, Judge Sletvold accepted Appellant's waiver of counsel as knowing, voluntary, and intelligent. *Id.* at 20-27.

On July 20, 2022, Appellant appeared *pro se* at a pretrial conference before the Honorable Anthony S. Beltrami. At this hearing, Judge Beltrami stated that he was "not satisfied with the record that Judge Sletvold made[,]" and proceeded to conduct a second colloquy concerning Appellant's decision to waive his right to counsel. *See* N.T., Pretrial Conf., 7/20/22, at 2-16, 19-20. During the colloquy, Appellant argued that because appointed counsel would need additional time to review his case, the appointment of counsel would adversely impact his Pa.R.Crim.P. 600 rights. *Id.* at 14-19.

On July 22, 2022, Judge Beltrami issued an order appointing counsel for Appellant. *See* Trial Ct. Order, 7/22/22, 1-2. Therein, the trial court concluded that Appellant's waiver of counsel was not knowing, voluntary, and intelligent, as it was based on his "unreasonable belief" that the appointment of new counsel "could cause a delay that would prevent him from being released on nominal bail or having the charges dismissed pursuant to Rule of Criminal Procedure 600." *See id.* Judge Beltrami also found that Appellant was incompetent to represent himself, relying in part on a psychological evaluation[1] which stated that Appellant suffered from "chronic major depression and generalized anxiety disorder, which . . . requires cognitive

_____

[1] This psychological evaluation was ordered by the trial court at Appellant's request, to document his "history of substance abuse issues and mental health issues that will directly affect issues involving culpability and ultimately disposition of this matter." *See* Appellant's Appl. for Evaluations, 6/29/21, at 1; Trial Ct. Order, 6/29/21. After this evaluation was produced, on November 4, 2021, the trial court denied Appellant's application to a diversionary program that was an alternative for criminal disposition of charges. *See* Trial Ct. Order, 11/4/21.

The evaluation states that Appellant's "thought content was clear, appropriate and on topic[,]" and his "thought processes were linear and logical." Psychological Eval., 8/7/21, at 5. The references in the evaluation to "poor judgment" are that "[Appellant's] judgment is poor as evidenced by his numerous arrests, his write-ups while in prison and his continued substance use despite completing substance abuse treatment[,]" and "[Appellant's] history of negative behaviors indicates the presence of poor judgment." *Id.* The evaluation also states that "[Appellant] will need mental health therapy in the form of cognitive behavioral therapy to address his cognitive distortions and teach coping skills in order to address his mental health diagnoses and improve his overall functioning." *Id.*

behavioral therapy to address [ ] cognitive distortions and poor judgment[.]"

*Id.*

Over his objection, Appellant was represented by appointed counsel at trial in October of 2022. Ultimately, the jury found Appellant guilty of two counts of second-degree burglary, two counts of attempted burglary, two counts of theft by unlawful taking, one count of criminal mischief, and one count of possession of an instrument of crime at trial court docket numbers 1414-2021 and 1415-2021.[2]  *See* Verdict Slip, 10/5/22, 1-3.  On February 8, 2023, Appellant was sentenced to an aggregate term of ten to twenty years in state prison.  *See* Sentencing Orders, 2/8/23.  Appellant timely appealed under both docket numbers, and both the trial court and Appellant complied with Pa.R.A.P. 1925.[3]

On appeal, Appellant raises the following issues for review:

1. Did the trial court err in denying [Appellant's] repeated requests to waive counsel as a thorough colloquy informing [Appellant] of his rights and potential penalties was made, as the trial court reversed a decision made by a court of coordinate jurisdiction, and as if the trial court determined [Appellant's] history of mental illness rendered him incompetent to represent himself the court should have also declared [Appellant] incompetent to stand trial?

---

[2] *See* 18 Pa.C.S. §§ 3502(a)(4); 901(a), 3502(a)(4); 3921(a); 3304(a)(5); and 907(a), respectively.  Appellant was also found not guilty of an additional count of second-degree burglary.

[3] The trial court's Rule 1925(a) opinion of September 6, 2023, incorporates its June 20, 2023 opinion addressing Appellant's post-sentence motions.

2. Did the trial court abuse its discretion in joining the separate Criminal Informations in Northampton County criminal dockets 1414/2021 & 1415/2021?

3. Was the evidence insufficient to convict [Appellant] of the burglaries and related offenses committed in February and March of 2021 as:

   a. It failed to identify that [Appellant] was the perpetrator of the burglaries and related offenses beyond a reasonable doubt?

   b. It failed to prove beyond a reasonable [doubt] the amount of damages to support the charged criminal mischief[?]

4. Did the [trial] court abuse[] its discretion in denying Appellant a new trial as the verdicts were against the weight of the evidence[?]

Appellant's Brief, at 3-4 (some formatting altered).[4]

In his first issue, Appellant claims that Judge Beltrami committed reversible error "in denying [Appellant's] repeated requests to self-represent and in reversing prior . . . decisions allowing him to do so[,]" and argues that it was improper for Judge Beltrami to "overtur[n] the decision of another court of coordinate jurisdiction if there has been no new revelation of facts or change in the law." *See id.* at 22-23 (citing *Commonwealth v. Starr*, 664 A.2d 1326, 1334 (Pa. 1995)).

Before reaching the merits of Appellant's self-representation claim, we first address whether the coordinate jurisdiction rule barred Judge Beltrami

_____

[4] In his Rule 1925(b) statement, Appellant included two additional claims concerning Rule 600 and the discretionary aspects of his sentence. However, because Appellant did not include these claims in his brief, they are abandoned on appeal and therefore waived. *See* Pa.R.A.P. 2116(a),; *see also Commonwealth v. McGill*, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where the appellant abandoned a claim on appeal).

- 5 -

from revisiting Judge Sletvold's prior order and appointing counsel for Appellant over his objection. In *Starr*, the defendant requested to represent himself in a case involving the death penalty. The defendant had been psychiatrically evaluated and determined to be mentally competent to stand trial. *See Starr*, 664 A.2d at 1330. "Following a hearing and a thoroughly probing colloquy," one trial judge allowed the *Starr* appellant to proceed *pro se*. *Id.* A second trial judge, however, "revoked [the] earlier order granting appellant the right to self-representation and . . . ordered the Public Defender's Office to assume control of [the] appellant's defense at trial and at sentencing." *Id.*

On appeal, our Supreme Court considered "whether the second trial court erred when it revoked appellant's right to represent himself by rescinding the first trial court's . . . ruling accepting appellant's waiver of counsel." *Id.* at 1331 (footnote omitted). Specifically, the *Starr* Court examined whether the second judge had violated the rule of coordinate jurisdiction,[5] explaining that "judges of coordinate jurisdiction sitting in the

_____

[5] The *Starr* Court described "coordinate jurisdiction" as "the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter[,]" including within this concept that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." *Id.* at 1331 (citations omitted). Our Supreme Court also recognized that the "coordinate jurisdiction rule falls squarely within the ambit of a generalized expression of the 'law of the case doctrine.'" *Id.*

- 6 -

same case should not overrule each others' decisions[]" unless there are "exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1331-32 (citations omitted); *see also Commonwealth v. Taylor*, 277 A.3d 577, 586 (Pa. Super. 2022) (explaining that coordinate jurisdiction rule "does not apply when distinct procedural postures present different considerations, then a substituted judge may correct mistakes made by another judge at an earlier stage of the trial process, or, perhaps more accurately, may revisit provisional rulings made earlier in the litigation" (citation omitted)). Ultimately, the *Starr* Court held that the second trial court judge's decision to reopen the matter of the defendant's decision to proceed *pro se*, without any new evidence, violated the coordinate jurisdiction rule and was an abuse of discretion. *Starr*, 664 A.2d at 1334.

Here, prior to trial, Judge Sletvold and Judge Beltrami considered the same question, namely whether Appellant made a knowing, voluntary, and intelligent waiver of the right to counsel so that he could exercise his right to self-representation. *See id.* at 1330 ("the transferee court may not alter the resolution of a legal question previously decided by the transferor court" (citation omitted)); *cf. Taylor*, 277 A.3d at 586 (coordinate jurisdiction "rule does not apply when distinct procedural postures present different considerations" or when revisiting "provisional rulings made earlier in the

- 7 -

litigation" (citation omitted)). While Judge Beltrami expressed dissatisfaction with Judge Sletvold's colloquy, he failed to identify a permissible basis to revisit this issue. Neither Judge Beltrami nor the Commonwealth have identified "an intervening change in the controlling law," nor pointed to a "manifest injustice" if the rule of coordinate jurisdiction were to be applied to this matter. *See Starr*, 664 A.2d at 1332.

Further, the record confirms that the relevant facts and evidence were substantially the same during the hearing before Judge Sletvold on May 18, 2022, and the hearing before Judge Beltrami on July 20, 2022. The only evident change is that Judge Beltrami clearly had the benefit of reviewing Appellant's psychological evaluation, while it is unclear whether Judge Sletvold had reviewed this report before issuing her order. *Compare* N.T., Pretrial Conf., 5/18/22, at 11-15, 20-27 *with* Trial Ct. Order, 7/22/22, at 2; Psychological Eval., 8/7/21.

However, the record reflects that, at the time Judge Beltrami indicated that he would be revisiting the issue of counsel, he had not yet reviewed this report. *See* N.T., Pretrial Conf., 7/20/22, at 19-20. Therefore, the contents of this psychological evaluation could not serve *ex post facto* as a "substantial change in the facts and evidence" to revisit an issue resolved by a prior order. *Starr*, 664 A.2d at 1332.

In *Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa. Super. 2004), this Court considered the requirements to waive counsel and noted that:

> Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of these rights can never be harmless. The constitutional right to counsel may be waived but this waiver is valid only if made with knowledge and intelligence.

*Houtz*, 856 A.2d at 122 (citations omitted and some formatting altered); *see also Faretta v. California*, 422 U.S. 806, 821 (1975) (noting that "[u]nless the accused has acquiesced [to appointed counsel], the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense").

Before a criminal defendant may proceed *pro* se, however, a trial court must conduct a "probing colloquy" to determine if defendant "knowingly, voluntarily and intelligently waives his constitutional right to the assistance of counsel." **See Starr**, 664 A.2d at 1335. The purpose of this colloquy is to determine "(1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not." **Id.** (citation omitted). "To be a knowing and intelligent waiver defendant must be aware of both the right and of **the risks of forfeiting that right**." **Commonwealth v. Phillips**, 141 A.3d 512, 517 (Pa. Super. 2016) (emphasis added) (citation omitted). "[F]or this Court to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right." **Houtz**, 856 A.2d at 122 (formatting altered and citation omitted). Furthermore, our Supreme Court has held that

> a consideration of the defendant's best interests (*i.e.*, that the defendant would be subject to less risk of conviction and/or

consequently more severe punishment if represented by competent counsel) is wholly irrelevant to an assessment of whether a criminal defendant has rendered a knowing and intelligent waiver of his right to the assistance of counsel or not.

**Starr**, 664 A.2d at 1336 (citing **Faretta**, 422 U.S. at 834).

Rule 121 in the Pennsylvania Rules of Criminal Procedure provides the following factors to determine whether a waiver of the right to counsel is knowing, voluntary, and intelligent, that is, whether a defendant:

(a) . . . understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) . . . understands the nature of the charges against the defendant and the elements of each of those charges;

(c) . . . is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) . . . understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) . . . understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) . . . understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2); **see also Starr**, 664 A.2d at 1335.

Here, Judge Sletvold diligently questioned Appellant about the factors set forth in Rule 121, and Appellant in turn indicated that he understood what was at stake and the risks of forfeiting counsel and representing himself. **See**

N.T. Pretrial Conf., 5/18/22, at 11-15, 20-27.  Appellant indicated that he wished to assert his Rule 600 speedy trial rights,[6] and that this intention factored into his reasons for waiving counsel.  After confirming Appellant's understanding of the Rule 121 factors, Judge Sletvold allowed Appellant to waive counsel.  *Id.* at 27.  We discern no clear error or manifest injustice in Judge Sletvold's order.  *See id.* at 11-15, 20-27; *see Starr*, 664 A.2d at 1332.  On this record, we conclude that Judge Beltrami was constrained by the rule of coordinate jurisdiction to give effect to the prior acceptance of Appellant's waiver of counsel, and it was legal error and an abuse of discretion to revoke this prior ruling.  *See Starr*, 664 A.2d at 1334.  Therefore, we conclude that Appellant is entitled to relief on this claim.[7]

_____

[6] "Rule 600" and "speedy trial rights" refers to Pa.R.Crim.P. 600, Prompt Trial.

[7] In any event, even if the rule of coordinate jurisdiction does not apply, we would conclude that Judge Beltrami erred by appointing counsel over Appellant's objections on the basis that Appellant's waiver was not knowing and intelligent and that Appellant was not competent to waive counsel.

To Judge Beltrami's question of "why do you want to [waive your right to counsel[?]" Appellant responded:

> I had private counsel.  He had the case for approximately one year, and we worked on the case for one year and he withdrew from the case.  I don't have the luxury to allow somebody else to learn the case at this stage of trial.  So I mean I know the case. I read the case myself.  The last 475 days I have been held in pre-trial incarceration.  So I don't have the luxury to allow somebody else to learn it.  For me to be held in pre-trial incarceration longer than the statutory right of 365 days for a trial –

N.T., Pretrial Conf., 7/20/22, at 14-15.
*(Footnote Continued Next Page)*

- 11 -

Judge Beltrami further probed Appellant's understanding of Rule 600 and concluded Appellant had an "unreasonable belief" regarding his Rule 600 claim. *See* Trial Ct. Order, 7/22/22, at 2. On this record, we find that Judge Beltrami required Appellant to establish that he understood the law as well as competent defense counsel. *Compare* N.T. Pretrial Conf., 7/20/22, at 2-16, 18-19 *with Phillips*, 141 A.3d at 517, *and Houtz*, 856 A.2d at 122 (explaining defendant "must clearly demonstrate an informed relinquishment of a known right"). Whether Appellant ran a higher risk of conviction and more severe punishment by proceeding *pro se* is "wholly irrelevant to an assessment of whether [Appellant] has rendered a knowing and intelligent waiver of his right to the assistance of counsel." *Starr*, 664 A.2d at 1336. Here, we find that Judge Beltrami erred by applying a "best interests" standard to the question of whether Appellant knowingly and intelligently waived counsel.

Turning to the competency grounds for rejecting Appellant's waiver of counsel, we note that the standard for determining a defendant's competency to waive counsel and to stand trial are identical. *See Commonwealth v. Blakeney*, 108 A.3d 739, 752 (Pa. 2014) (explaining that to be competent a defendant must be able to understand the nature of the proceedings and have the ability to participate in his own defense). Further, a defendant is presumed competent to stand trial and a defendant's incompetence must be established by a preponderance of the evidence. *See id.*

Here, the psychological evaluation stated that Appellant's "thought content was clear, appropriate and on topic[;]" his "thought processes were linear and logical[;]" and that he exhibited self-sabotaging conduct and "poor judgment." *See* Psychological Eval., 8/7/21, at 5. The evaluation concluded that Appellant had chronic major depression, generalized anxiety disorder, and experienced cognitive distortions. *See* Trial Ct. Order, 7/22/22, 1-2. Although this evidence shows Appellant might exercise "poor judgment" or be subject to "cognitive distortions," it fails to establish that Appellant is incompetent to exercise his right to represent himself. *See Blakeney*, 108 A.3d at 752. On this record, we are constrained to find that Judge Beltrami's conclusions about Appellant's competency are not supported by the record. As deprivation of the right to self-representation "can never be harmless error," we would be constrained to vacate Appellant's judgments of sentence and remand for a new trial as neither reason for imposing counsel on Appellant is supported by the record. *See Houtz*, 856 A.2d at 122.

For these reasons, we are constrained to vacate Appellant's judgments of sentence and remand for a new trial.[8]

Judgments of sentence vacated. Cases remanded for a new trial. Jurisdiction relinquished.

President Judge Lazarus joins the memorandum.

President Judge Emeritus Stevens files a concurring memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/4/2025

---

[8] Given our disposition, we need not consider Appellant's joinder, sufficiency, and weight-of-the-evidence claims.