J-S42011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER OLIVER | : | |
| | : | |
| Appellant | : | No. 557 MDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered March 20, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002399-2023

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.:                          **FILED: MAY 1, 2026**

Appellant, Christopher Oliver, appeals from the judgment of sentence entered March 20, 2025.  We are constrained to vacate Appellant's judgment of sentence and remand for a new trial.

On June 16, 2023, Ayanna Lockwood (the "Victim") met Appellant, her former boyfriend and father of her child, at Maria's, a restaurant on Penn Street in Berks County, Pennsylvania, for cocktails.  The pair eventually left and went to another restaurant, the Italian Garden, and consumed a few more cocktails.  Thereafter, they left the Italian Garden and headed toward an apartment building along Penn Street where the pair used to live together. They proceeded to the apartment building's open backyard and engaged in sexual intercourse.  Subsequently, while they were still together, the Victim's cellular telephone rang, revealing that she was receiving a telephone call from

a mutual friend named "Earl." N.T. Trial, 2/10/25, at 131. Upon seeing the incoming call, Appellant became angry, and stated: "I knew you [were] fucking my friend. … [Y]ou're not gonna [sic] make it out of this alley alive." *Id.* Appellant then "pulled out [a] knife" and began cutting the Victim's neck, while continuing to threaten her. *Id.* 132-133. The Victim was able to escape when a neighbor opened his back door, allowing her to run through the neighbor's apartment and up the stairs to another apartment of an individual she knew. The Victim called the police and Emergency Medical Services ("EMS"). Later, EMS took the Victim to Reading Hospital, where she was treated for "life-threatening" injuries she sustained to her neck. N.T. Trial, 2/11/25, at 243.

On July 18, 2023, the Commonwealth charged Appellant with attempted murder, aggravated assault – serious bodily injury, aggravated assault with a deadly weapon, two counts of simple assault and recklessly endangering another person.[1] Upon application of Appellant's counsel, Appellant was deemed incompetent to stand trial on December 14, 2023. Because of mental disease or defect, Appellant was also remanded to Norristown State Hospital, a mental health treatment facility.

On November 13, 2024, however, the trial court convened a hearing to reassess whether Appellant remained incompetent to stand trial. At the hearing, Appellant expressed a desire to proceed *pro se*. On December 10,

---

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2702(a)(4), 2701(a), 2701(2), and 2705, respectively.

- 2 -

2024, the trial court entered an order, finding Appellant competent for trial, granting Appellant's request to proceed *pro se*, and appointing Alex Amoroso, Esquire, of the Berks County Public Defender's Office as stand-by counsel. The trial court subsequently reaffirmed its order during a status conference that took place on December 18, 2024.

Appellant acted as his own counsel at a jury trial that commenced on February 10, 2025. On February 12, 2025, Appellant was found guilty on all counts. On March 20, 2025, the trial court sentenced Appellant to an aggregate term of 18 to 40 years' incarceration. Appellant filed a post-sentence motion on March 24, 2025, which the trial court denied on March 26, 2025.[2]

Appellant subsequently appealed his judgment of sentence to this Court.[3] On appeal, Appellant's counsel filed a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

_____

[2] Attorney Amoroso filed the post-sentence motion on Appellant's behalf.

[3] As a technical matter, Appellant's appeal period in this case did not begin to run until March 28, 2025, because the trial court's order denying Appellant's post-sentence motion was not served on Appellant's counsel until March 28, 2025. **See** Pa.R.Crim.P. 114(C)(2) (explaining that an order is properly entered on the docket when the entry for the order indicates "(a) the date of receipt in the clerk's office of the order or court notice; (b) the date appearing on the order or court notice; and (c) the date of service of the order or court notice."); **see also** Pa.R.A.P. 108(a)(1), (d)(1) (appeal period only begins to run on the date the Clerk "mails or delivers copies of the order to the parties"). Hence, Appellant's notice of appeal, which was filed on April 28, 2025, is timely.

While this Court determined that Appellant's counsel complied with our procedural requirements, our independent review of the record revealed a potential non-frivolous issue: whether Appellant knowingly, intelligently, and voluntarily waived his right to counsel. *See Commonwealth v. Oliver*, 2026 WL 252892, at *1 (Pa. Super. Jan. 30, 2026) (non-precedential decision). As such, we remanded the case and directed Appellant's counsel to further review the certified record and either file a merits brief or a supplemental *Anders* brief. On return from remand, Appellant's counsel filed a merits brief and, now, Appellant raises the following issue for our review.

> [W]hether [Appellant] knowingly, intelligently and voluntarily waived his right to counsel?

Appellant's Brief at 7.

"Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." *Commonwealth v. Johnson*, 158 A.3d 117, 121 (Pa. Super. 2017) (citation omitted). Our Supreme Court previously stated:

> [i]t is . . . firmly established that an accused has a constitutional right to counsel during trial. While an accused may waive his constitutional right, such a waiver must be the free and unconstrained choice of its maker, and also must be made knowingly and intelligently. To be a knowing and intelligent waiver defendant must be aware of both the right and of the risks of forfeiting that right.

*Commonwealth v. Tyler*, 360 A.2d 617, 620 (Pa. 1976) (citations and quotation marks omitted). Deprivation of these rights can never be harmless.

- 4 -

*Johnson*, 158 A.3d at 121. "Failing to conduct an on the record colloquy pursuant to Rule 121[] before allowing a defendant to proceed *pro se* constitutes reversible error." *Johnson*, 158 A.3d at 122.

"A [trial court's] thorough inquiry into the accused's appreciation of both the right to counsel and the right to represent oneself must be used in certain summary proceedings, at trial, guilty plea hearings, sentencing, and every 'critical stage' of a criminal proceeding." *Id.* at 122 (citations, original quotation marks, and original brackets omitted). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Id.* (citation omitted). It is well-established that "when a defendant seeks to waive the right to counsel, the trial court is required to conduct, **on the record**, a full and complete waiver colloquy to determine whether the defendant's waiver is knowing, voluntary, and intelligent." *Commonwealth v. Brazil*, 701 A.2d 216, 219 (Pa. 1997) (emphasis added); *see also Johnson*, 158 A.3d at 123 (vacating the appellant's judgment of sentence because there was "nothing in the record indicating [that the a]ppellant ever waived his right to counsel on the record before the trial court conducted [a] suppression hearing").

Pennsylvania Rule of Criminal Procedure 121 sets forth the minimum requirements for a valid waiver-of-counsel colloquy as follows:

**Rule 121. Waiver of Counsel**

**(A) Generally.**

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the [trial court] or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

(3) The [trial court] or issuing authority may permit the attorney for the Commonwealth or defendant's attorney to conduct the examination of the defendant pursuant to paragraph (A)(2). The [trial court] or issuing authority shall be present during this examination.

Pa.R.Crim.P. 121(A)(1-3).

The Commonwealth criminally charged Appellant on July 18, 2023. Thereafter, on September 21, 2023, Attorney Amoroso entered his

appearance as Appellant's counsel. Upon application of Appellant's counsel, Appellant was deemed incompetent to stand trial on December 14, 2023. Ultimately, however, on November 13, 2024, the trial court convened a hearing to reassess whether Appellant remained incompetent to stand trial. At the hearing, Appellant expressed a desire to obtain new counsel. The relevant exchange is as follows:

> The court: Will you agree to be examined by a doctor on the Commonwealth's side? I'm asking you again so we can move forward.
>
> [Appellant]: If I get me a conflict lawyer, a conflict attorney, we can move forward.
>
> The court: What conflict attorney? I don't know what you are talking about.
>
> Mr. Amoroso: Judge, he is asking to have me removed.
>
> The court: Okay. No. There is your answer.
>
> [Appellant]: No?
>
> The court: No, I am not appointing another public defender to represent you. That's not going to happen.
>
> [Appellant]: No. No.
>
> The court: Then you won't agree to be examined?
>
> [Appellant]: No.

N.T. Hearing, 11/13/24, at 9. Later on, during Appellant's competency hearing, Attorney Amoroso stated that Appellant expressed a desire to proceed *pro se*. Attorney Amoroso stated:

> Judge, you may want him to be brought down. The only reason I suggest that is he is going to be wanting to represent himself.

- 7 -

He has indicated that he does not want me as his attorney in [any] way.

*Id.* at 13. The trial court responded:

Okay. December 18th at 10:30 [a.m. Appellant,] I'm going to have you brought back down on December the 18th at 10:30 [a.m.] If I make a determination that you are competent and then we go through a number of questions to see whether or not you want Mr. Amoroso to represent you or whether you are going to represent yourself on December 18th, assuming that I would say that you can go forward with your trial, we are going to schedule your trial on the 18th, okay[?] … So by the 18th, assuming if I decide that you are able to proceed, you are going to have to decide if you are going to represent yourself because I am not going to appoint another public defender to represent you.

*Id.* at 14. Thereafter, on December 10, 2024, the trial court entered the following order.

AND NOW, this [10]th day of December, 2024, upon consideration of [Appellant's] motion under 50 P.S. § 7404 for [a] hearing pursuant to Act 143, Section 401-404 (Mental Health Procedures Act of 1976) to determine competency and [a] hearing [was] held, it is hereby ORDERED that [Appellant] is found [to be] competent to proceed to trial.

FURTHER, [Appellant's] request to proceed *pro se* is GRANTED. Alex Amoroso, Esquire[,] shall be appointed as standby counsel.

Trial Court Order, 12/10/24, at 1 (unnecessary capitalization and footnotes omitted).

On December 18, 2024, the parties convened for a status conference.[4]

At the outset of the hearing, Attorney Amoroso stated:

> Judge, this morning I gave [Appellant] his discovery as well as the transcript from the preliminary hearing. I informed him of your decision and that you would appoint me standby counsel. He informed me that he does not want me to be standby counsel. He would like someone else. I explained that Your Honor would likely not do that.
>
> I would say to the [c]ourt that every conversation that I recently had with [Appellant] is extremely hostile so I don't know in this rare circumstance maybe the [c]ourt would be willing to grant that request. But he has filed motions with the disciplinary board against me, different things like that. I don't know if in this rare situation it might be best; but if you would like me to continue as standby, I will absolutely do that. But I will defer to Your Honor.

N.T. Hearing, 12/18/24, at 2-3. The trial court and Appellant than engaged in the following exchange.

> The court: All right So [Appellant], you've been in front of me a number of times. I've explained to you on multiple occasions that you have the three options; hire whoever you want to hire, use Mr. Amoroso as your free attorney or represent yourself. You've asked me on more than one occasion to represent yourself. Part of the basis that I came in making my decision about whether or not you're competent to proceed is you've been in front of me a number of times and it seems to me everything I've explained to you, everything I've described to you[,] you understand. I've asked you many questions. It certainly seems to me you understand where you are, that this is a criminal matter, the nature of the charges, the fact that we're at a point in time where we should be scheduling this

---

[4] The transcripts for the December 18, 2024 conference were not previously included in the certified record prior to our earlier remand in this case. As indicated in Appellant's recently-filed merits brief, the transcripts were not ordered until February 5, 2026 and were not filed until February 10, 2026. *See* Appellant's Brief at 5.

matter for trial if that's where you want to go. Do you understand all of that?

[Appellant]: Yes, sir.

The court: You have to answer.

[Appellant]: Yes, sir.

The court: Okay. Now, there was a decision that came down relatively recently just in an advance sheet that I saw that did allow under unique circumstances which I have – we have here for the appointment of another – a different free attorney. And if you and Mr. Amoroso are essentially just butting heads here, I will appoint somebody else from the Public Defender's Office to be back-up counsel for you. Do you understand that?

[Appellant]: Yes, I do.

The court: But [Appellant], they're just there – they're not even going to sit at the table with you. You're still going to have to pick a jury, ask for cause challenges during jury selection, understand what peremptory challenges are and exercise those peremptory challenges, do your own opening statement, closing statement, cross-examine any witnesses called by the Commonwealth, call any witnesses on your own behalf and do the direct examination and then possibly redirect examination of any of those witnesses, review the jury slip, review the jury instructions and ask me if you want any changes or corrections to those.

You're going to be responsible for doing all those things if you represent yourself. Do you understand that?

[Appellant]: Yes, sir.

The court: And you're willing and ready to do that?

[Appellant]: Yes, sir.

The court: Yes?

[Appellant]: Yes, sir.

*Id.* at 3-5.

A review of the foregoing demonstrates that Appellant did not knowingly, intelligently, or voluntarily waive his right to counsel on the record before the trial court.[5] First, the record is silent as to whether the trial court colloquied Appellant before it entered the December 10, 2024 order granting Appellant's request to proceed *pro se*. Importantly, "waiver [cannot] be presumed where the record is silent. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." ***Commonwealth v. Monica***, 597 A.2d 600, 603 (Pa. 1991).

Second, even if we were to construe the exchange between the trial court and Appellant during the December 18, 2024 status conference as a waiver-of-counsel colloquy, it was woefully deficient.[6] The trial court did not ensure that Appellant understood (1) the nature of the charges or the elements of each of those charges; (2) the permissible range of sentences

---

[5] A written colloquy is not included in the certified record. Hence, we only consider the oral "colloquy" that occurred on December 18, 2024.

[6] During the status conference on December 18, 2024, the trial court remarked that one of the reasons it determined that Appellant was competent to stand trial was that Appellant seemed to understand everything the court asked, including where he was, the nature of the proceedings, the nature of the charges, and the status of the current proceedings. While some of these remarks and observations touched upon issues pertinent to the valid waiver of the right to counsel, others had little, if anything, to do with Appellant's understanding of the rights at issue. Hence, this exchange was no substitute for the structured inquiry contemplated by Rule 121, which is carefully designed to elicit a defendant's comprehension of the nature of the right to counsel and the consequences of forfeiting that right in the context of criminal prosecution.

- 11 -

and/or fines that for the offenses charged; (3) that, upon waiving his right to counsel, Appellant would be bound by all procedural rules that counsel would be aware of; (4) the possible defenses which his counsel may be aware of that could be permanently lost if not raised at trial; and (5) that Appellant has many rights, including the right to challenge trial court rulings and to seek the correction of errors, which, if not timely asserted and preserved, may be lost permanently. *See* Pa.R.Crim.P. 121(A)(1-3).

In past cases, this Court has determined that a waiver colloquy is insufficient where the trial court fails to address, on the record, the elements enumerated within Rule 121. *See Commonwealth v. Clyburn*, 42 A.3d 296, 301 (Pa. Super. 2012) (holding that, while appellant was advised of the grading of the charged offenses as well as the respective permissible and guidelines sentencing ranges, the trial court's oral colloquy of the defendant failed to "elicit information from [the defendant] that adequately demonstrate[d] that she understood the nature of the charges against her and the elements of each of those charges" and, as such, the defendant's Rule 121 colloquy was defective); *see also Commonwealth v. Houtz*, 856 A.2d 119, 130 (Pa. Super. 2004) (holding that, notwithstanding defendant's extensive interaction with trial court and prior representation in a previous trial on same offenses, the trial court's failure to ensure that the defendant "understood the nature and elements of the charges and the ranges of penalties the court could impose" rendered the court's colloquy of the defendant defective and warranted a new trial). We therefore conclude that the record does not

establish that the trial court discharged its obligation to fully ascertain whether Appellant knowingly, voluntarily, and intelligently waived his right to counsel. As such, we are constrained to vacate Appellant's judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/01/2026